# Ruse *v.* Bromberg.

*Bill in Equity by Creditor, to set aside Conveyance as Fraudulent.*

| 88 | 619 |
| 93 | 108 |
| 93 | 276 |
| 88 | 619 |
| 101 | 132 |
| 88 | 619 |
| 140 | 431 |

1. *Amendment of answer, interposing demurrer; error without injury.* Since all matters of defense may be incorporated in the answer, and an

answer may be amended, at any time before final decree, so as to set up any matter of defense (Code §§3442, 3449), it is no objection to a proposed amendment, that it is in the nature of a demurrer; yet, if the demurrer is not well taken, the refusal to allow such amendment is not a reversible error.

2. *Parties to bill; when creditors may join.*—By statutory provision, two or more judgment creditors, having executions returned "No property found," may unite in a bill for discovery of the assets of their common debtor (Code, § 3546), though creditors by simple contract can not; yet, by the common practice for nearly thirty years, creditors by simple contract have been allowed to join in a bill to set aside a fraudulent conveyance executed by their common debtor, and the practice is commendable on the ground of convenience, as well as tending to prevent a multiplicity of suits.

3. *Same; assignee of two insolvent corporations.*—The common assignee of two insolvent corporations, under separate assignments for the benefit of creditors, may maintain a bill in equity to set aside a fraudulent conveyance executed by a common debtor, and subject the property conveyed to the satisfaction of both debts.

4. *Liability of stockholder to corporation, or its general assignee.*—As a general rule. the liability of a stockholder in a private corporation, on his subscription for stock, does not mature until a call is made by the governing body, and he can not be sued without a previous call; but, where the subscription is made payable at specified times, and in specified sums, either by its own terms, or by the provisions of the charter, the installments become due as specified, and a suit may be maintained without a previous demand; and if the corporation becomes insolvent, and executes a general assignment for the benefit of its creditors, the assignee succeeds to its right of action.

5. *Absolute conveyance, intended as mortgage; validity as against creditors.*—A conveyance which, though absolute on its face, is intended only as security for a debt, is fraudulent and void as against existing creditors, because it operates the reservation of a secret benefit to the grantor; and neither the *bona fides* of the debt, the absence of a fraudulent intent, nor ignorance of the legal consequence, relieves the infirmity.

6. *Conveyance by husband, to or for wife.*—On a purchase of property by the husband, paying the purchase-money with his own funds, but taking the title in the name of his wife, the conveyance is fraudulent and void as against his existing creditors, without reference to his actual intent, his financial condition, or the kind and value of the property.

7. *Fraudulent conveyance, operating as security or indemnity.*—A conveyance which is tainted with actual fraud—that is, with the intent to hinder, delay or defraud creditors, in which intent the grantee participated—can not be allowed to stand as security to reimburse the grantee for any money advanced by him under it; but, when it is only constructively fraudulent, because of the inadequacy of the consideration paid, it may stand as security to reimburse him for moneys paid in removing incumbrances on the property.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 31st March, 1887, by Fred. G. Bromberg, as assignee of the Alabama Insurance Company, and also as assignee of the Citizens' Insurance Company, two insolvent domestic corporations, against John C. Ruse and his wife, Herman W. Leinkauf, and William H. Leinkauff; and sought to set aside, as fraudulent, two

[Ruse v. Bromberg.]

conveyances of a house and lot in the city of Mobile, which had been executed by Ruse and wife to said H. W. Leinkauf, and to subject the property to the satisfaction of the indebtedness of said Ruse to said insolvent corporations. The property was conveyed to Ruse and wife jointly, by W. G. Little and wife, by deed dated March 20th, 1885, which was filed for record in September, 1886, the recited consideration being $350 paid in cash, and the grantees' two joint notes for $2,550 each, payable on the 1st January, 1886, and 1887, respectively; and the bill assailed this conveyance, also, as a gift by said Ruse to his wife, on the ground that he paid the entire purchase-money, and was largely indebted at the time. The first conveyance by Ruse and wife to Leinkauf was dated September 22d, 1886, was absolute in form, with convenants of warranty, and recited a consideration of $2,000 paid in cash; while the second, also absolute in form, and dated March 30th, 1887, contained the following recitals as to its consideration: "Whereas John C. Ruse and Kitty S. Ruse did, on the 22d day of September, 1886, convey the hereinafter described property to Herman W. Leinkauf, for the consideration expressed in the deed of $2,000, but which consideration was really, and ought to have been so expressed in the deed, the sum of $4,500; said consideration being $2,000 paid at said date of 22d September, 1886, and the assumption to pay by said Leinkauf the amount of $2,500 and interest, still due on said property by said John C. and Kitty S. Ruse as purchase-money thereof; and whereas said Herman W. Leinkauf has paid and satisfied said claim of $2,500 and interest on said lot, and is now desirous that the conveyance made to him may set forth the true and correct consideration; now, in consideration of the premises, and the further sum of $2,000 this day paid by the said John C. and Kitty S. Ruse," &c.

The assignments to the complainant were each executed on the 5th January, 1887, and conveyed all the property and assets of the respective corporations, with outstanding debts, in trust for the benefit of their creditors. The indebtedness of Ruse, the collection of which the bill sought to enforce, consisted partly of unpaid subscriptions for stock made prior to the 20th March, 1885, and partly of balances due on general account, at different times between that day and March 1st, 1887, in general business transactions. The bill alleged that John C. Ruse paid the entire purchase-money to Little, and took the title in the joint names of himself and

[Ruse v. Bromberg.]

his wife as a means of giving her a one-half interest in the property; that he was at the time in embarrassed circumstances, if not insolvent, and was indebted to each of said corporations; that he had no visible property subject to execution, and that the deed from Little was purposely withheld from record to conceal the property from creditors. It was alleged, also, that each of the conveyances to Leinkauf, though absolute on its face, was intended only as a mortgage, and was so executed for the purpose of hindering, delaying and defrauding the creditors of Ruse.

A joint answer was filed by Ruse and wife, and a joint answer by H. W. and W. H. Leinkauf. Each denied all the averments and charges of fraud, and admitted that the conveyances to Leinkauf were each intended only as a mortgage; the consideration being, as alleged by them, money advanced by him to pay the purchase-money due to Little. In the answer of Ruse and wife was a paragraph in these words: "Respondents deny the right of complainant to call upon them in any way on said notes [the notes of Ruse on subscriptions for stock], except by an assessment equal with all other stockholders, for such an amount as may pay up the liabilities of the corporation; and they deny the right of complainant to attack their transactions, or any property alienated by them, *until* a certain indebtedness is established against them, which is not, and can not be done, except by a regular proceeding against the stockholders, so that the court can call for such an assessment as it may deem necessary to settle all outstanding liabilities of the company. This has not been done, and, until it is done, respondents deny that they owe said indebtedness as set forth." After the cause had been submitted for decree on pleadings and proof, they asked leave to amend this part of their answer, by making the following changes and additions: "Respondents deny," &c., as above, "*until* a fixed indebtedness or liability is ascertained and established against them, or against John C. Ruse individually, by a regular suit in a common-law court, prosecuted to judgment, and on which judgment execution has issued and been returned 'No property found.' And they deny the right of complainant, as the representative of two distinct and separate parties, with two distinct and separate claims as simple-contract creditors, to join or be joined, as is herein done, in filing a bill to set aside or declare fraudulent transactions between these respondents and said Leinkauf & Son; and they further deny the right of com-

plainant, as representative in such double aspect, to attack said transactions as fraudulent."

The chancellor refused to allow this amendment, and rendered a decree for the complainants, holding each of the conveyances assailed to be fraudulent, and ordering an account to be stated by the register to ascertain the amount of said Ruse's indebtedness to the complainant; but he added: "If, by reason of the report of the register, and the evidence adduced before him in stating the account, the ends of justice require it, the right to modify this decree is reserved, as well as to make all other necessary orders."

The refusal to allow the amendment, and the final decree, are now assigned as error by the defendants.

OVERALL & BESTOR, for appellants.—The allowance of the amendment was matter of right, and though the chancellor might have interposed terms, or finally overruled the defense set up, he had no right to reject it when offered.—Code, § 3449, and cases cited in note. (2.) The amendment presented a valid defense. Two or more creditors by simple contract can not unite in such a bill as this.—*Southern Railway Construction Co. v. McKenzie*, 85 Ala. 546. If the two corporations had appointed different assignees, they could not have joined in one bill; and the complainant, claiming under separate assignments, is a dual person, and can not unite his demands in one suit. (3.) When the bill was filed, the only indebtedness of Ruse to the insolvent corporations was on his note for stock; and this indebtedness can not be collected under a bill framed as the present is.—Mor. Corp., § 143; *Smith v. Huckabee*, 53 Ala. 192; *Curry v. Woodward*, 53 Ala. 377; *Gr. L. & H. Insurance Co. v. Kamper*, 73 Ala. 325. (4.) When Ruse borrowed money from Leinkauf, and executed the deed intended as a mortgage, he owed the insurance companies nothing but these stock notes, which were merely a contingent liability, which might never accrue, and which has never been rendered absolute by proper legal proceedings. Such a conveyance can only be assailed by existing creditors.—*Gordon v. McIlwain*, 82 Ala. 247; *Smythe v. Carlisle*, 16 N. H. 46; *Bryant v. Young*, 21 Ala. 264; *Sims v. Gaines*, 64 Ala. 397. (5.) The interest of Mrs. Ruse, acquired under the conveyance from Little and wife, if regarded as a gift from her husband, can only be subjected to his debts existing at that time, which certainly excludes all claims except stock notes then outstanding against him.

[Ruse v. Rromberg.]

(6.) The plaintiff himself, and his assignors, had knowledge of the ownership of the property by Ruse and wife, and can not complain of the failure to record their deed.—Wade on Notice, § 253; *Pike v. Armistead*, 1 Dev. Eq. 110. (7.) No fraud is proved on the part of Leinkauf, nor can he be charged with participating in any fraud, actual or constructive, on the part of Ruse. To the extent of the money paid by him in removing incumbrances on the property, he is entitled to protection even against existing creditors.—*Moog v. Farley*, 79 Ala. 253; *Calawell v. King*, 76 Ala. 156; *Anderson v. Hooks*, 9 Ala. 712; *Clements v. Moore*, 6 Wall. 299; *Potter v. Gracie*, 58 Ala. 303.

GREG. L. & H. T. SMITH, *contra.*—(1.) The practice has long been settled, of joining several separate creditors as complainants in a single bill like this, as was done in the following cases: *Reynolds v. Welsh*, 47 Ala. 201; *Evans v. Welch*, 63 Ala. 250; *Lehman v. Meyer*, 67 Ala. 398; *Bromberg v. Heyer Bros.*, 69 Ala. 24; *Danner L. & L. Co. v. Insurance Co.*, 77 Ala. 184; *Fellows v. Lewis*, 65 Ala. 344; *Early & Lane v. Owens*, 68 Ala. 171; *Chamberlain v. Dorrance*, 69 Ala. 41; *Benedict v. Renfro*, 75 Ala. 122; *Watts v. Nat. Bank*, 76 Ala. 475; *Seals v. Pheiffer & Co.*, 77 Ala. 279; *Levy v. Williams*, 79 Ala. 171; *Dixon v. Higgins*, 82 Ala. 284; *Carter Bros. v. Coleman*, 82 Ala. 179, and 84 Ala. 256. The general practice is persuasive of its own correctness, and it avoids a multiplicity of suits.—*Betancourt v. Eberlein*, 71 Ala. 461. Without the aid of statutory provisions, judgment creditors might unite in a bill to set aside a fraudulent conveyance.—*Brown & Dimmock v. Bates*, 10 Ala. 439. By statute, the right to file a bill to set aside a fraudulent conveyance is extended to creditors by simple contract, and it was intended to place them on an equality with judgment creditors in this respect.—*Jones v. Massey*, 79 Ala. 370; *Evans v. Welch*, 63 Ala. 250; *Carter v. Coleman*, 82 Ala. 181; *Lehman v. Meyer*, 67 Ala. 402. (2.) This is not the case of two or more creditors uniting in one bill, but of a single creditor seeking to subject property to the satisfaction of two demands held by him.—*Walker v. Miller & Co.*, 11 Ala. 267. There is no conflict of rights or interests involved, and the court can apportion the assets according to the evidence adduced. (3.) The point presented by the amendment not being tenable, the rejection of the amendment is not a reversible error. (4.) The convey-

[Ruse v. Bromberg.]

ance by Little and wife to Ruse and wife was a voluntary conveyance, to the extent of the half interest conveyed to Mrs. Ruse; and void as against the existing creditors of said Ruse.—*Peevy v. Cabaniss*, 70 Ala. 259; *Elliott v. Horn*, 10 Ala. 348; *Abney v. Kingsland*, 10 Ala. 355; *Seals v. Robinson*, 75 Ala. 363. (5.) Each of the conveyances to Leinkauf, though absolute on its face, was intended only as a mortgage, and is therefore fraudulent and void as against the existing creditors of the grantor.—*Sims v. Gaines*, 64 Ala. 392; *Hill v. Rutledge*, 83 Ala. 162. (6.) The debts represented by complainant were existing at that time, and might be enforced by suit.—*Wooldridge v. Holmes*, 78 Ala. 570; Cook on Stockholders, § 106; Wait on Insolvent Corporations, § 615; *Hatch v. Dana*, 101 U. S. 205; *Crawford v. Rohrer*, 59 Md. 599; 3 McC. 405. (7.) The conveyances were tainted with actual fraud, and therefore may be avoided by subsequent creditors.—*Huggins v. Perrine*, 30 Ala. 399; *Lawson v. Ala. Warehouse Co.*, 73 Ala. 293; *Tryon v. Flournoy & Epping*, 80 Ala. 321. (8.) Leinkauf can not claim reimbursement on account of any purchase-money paid by him to Little.—*Gordon v. Tweedy*, 71 Ala. 202; *Campbell v. Davis*, 85 Ala. 56. (9.) The evidence shows, as matter of fact, that he did not pay any of the purchase-money to Little; and the *onus* was on him to prove the fact, if it existed.

CLOPTON, J.—[1.] Appellants complain that the chancellor refused to allow an amendment of the answer to the amended bill, and on this ground ask a reversal of the decree. The amendment, though not formal, may be regarded in the nature of a demurrer, and will be so treated. Under the statute authorizing the incorporation of a demurrer in the answer, and the liberal construction placed upon the statute of amendments, a defendant has the right to amend his answer at any time before final decree by incorporating a demurrer therein.—*Shaw v. Lindsay*, 60 Ala. 344. But a denial of the right will not reverse the decree, if it appears that defendants were not prejudiced thereby.

[2.] The bill is filed by appellee in the capacity of assignee of two distinct and insolvent corporations—the Alabama Insurance Company, and the Citizens' Insurance Company—and assails for fraud certain conveyances of a lot of land in Mobile. Appellee was appointed by separate assignments. The first question raised by the proposed amendment relates

40

to the right of complainant to unite distinct claims, assigned separately by the companies, in a bill attacking for fraud a conveyance of his property by a common debtor, without having first obtained judgments at law, on which executions have issued and been returned "no property." The contention is, that the statute which authorizes a creditor without a lien to file a bill in chancery to subject to the payment of his debt property fraudulently conveyed by his debtor, does not extend to such creditors the general rule, which permits separate judgment creditors to join as complainants in a bill having such object. The statute has been in operation nearly thirty years. From the time of its enactment, it has been the common practice to unite in such bills two or more creditors without a lien, seeking to enforce separate and distinct demands. Many cases have been reviewed in this court, without the propriety of the practice being questioned. The statute has been generally considered as operating to place simple-contract and judgment creditors, as to the remedy, on the same footing. Were it difficult to perceive any sound principle of equity pleading on which to justify it, we would long hesitate to disturb a practice so general and continuous, especially as its tendency and effect are to promote convenience, and to prevent multiplicity of suits.

In *Montgomery & Florida Railway Co. v. McKenzie*, 85 Ala. 546, the bill was for discovery, and was filed under section 3545 of Code, 1886. The section was construed as creating a right in both judgment and simple-contract creditors, and in connection with the succeeding section, 3546, as providing the remedy for the enforcement of the right. The latter section provides, that any number of judgment creditors, upon whose judgments executions have been issued and returned "no property found," may join as complainants in such bill. On this express and limited provision, and the omission therefrom of creditors without a lien, it was held, that the statute does not allow the latter class of creditors to become common suitors. Section 3544, under which the present bill is filed, does not create, but only extends to simple-contract creditors, without restriction or qualification, express or implied, a right and remedy which judgment creditors possessed independent of statutory provisions.

[ 3. ] But, whether separate creditors without a lien may join in such bill, is not the precise question presented by the amendment. The claims of both companies are assigned and unite in complainant, by which he acquires a common inter-

[Ruse v. Bromberg.]

est in them.    They are of the same standing and dignity. The purpose of the bill is to subject to their payment a common estate, and all the defendants are interested in the subject-matter of the suit.    By joining the claims in one bill, expense is diminished, unnecessary and multiplied litigation avoided, and the defendants are not prejudiced.    We can see no difficulty that can arise from allowing complainant to assert in one bill his title as assignee to a common relief in respect to the several claims.    On the coming in of the report of the register, the decree may be so moulded as to properly adjust the rights and equities of the respective parties.

[4.]    The amendment further controverts the right of complainant to proceed to subject property alienated by the debtor, to the payment of notes given for the unpaid capital stock subscribed for, or purchased by him, until by proper proceedings against all the shareholders the amount of the outstanding liabilities of the corporation is ascertained, the *pro rata* proportion of each assessed, and a call therefor made.    When the liability is upon a subscription to the capital stock, and the charter or contract of subscription provides that the shares shall be paid in as required by the board of directors, the general rule is, that the stockholder's liability does not mature, and he can not be sued by the company, until a call is made.    If the charter and contract of subscription are silent as to the time of payment, a call or assessment is an implied condition precedent to a matured liability.    The rule is otherwise, when by the provisions of the charter, or of the contract, the subscription is payable at specified times, and in specified amounts.    In such case, the liability matures, and the subscriber is bound to pay, in all events, on the day stated; a call is not requisite.—1 Morawetz on Corp. § 144; Cook on Stock. § 106.    The grantor in two of the conveyances attacked gave notes for the unpaid capital stock of the companies, payable on demand.    Without regard to a call or assessment upon all the shareholders, the company could have instituted, at any time after the dates of the respective notes, a suit at law upon the notes, or have filed a bill to subject to their payment property fraudulently conveyed by the debtor; such suit being a sufficient demand.    Complainant, as assignee appointed by the board of directors, is clothed with all the rights and powers of the board essential to make the corporate assets available, and for this purpose may maintain any suit, at law or in equity, which the corporation could

have brought.—*Chamberlain v. Bromberg*, 85 Ala. 579; *Wooldridge v. Holmes*, 78 Ala. 568.

The disallowance of the proposed amendment does not affect the propriety of the decree, so far · as the questions raised thereby are concerned.

[5.] Complainant seeks by the bill to set aside for fraud two conveyances made by Ruse and his wife to Herman W. Leinkauf,—one on September 22, 1886, and the other on March 20, 1887. The first may be disregarded, as it was superseded by the second, which recites that it was executed to express the true consideration of the first. The deeds are absolute in form, but the answers admit that they were a security for the re-payment of the amount expressed as the consideration, and were intended to operate as mortgages. It is well settled, that such conveyances are. fraudulent and void as to existing creditors, because they operate a reservation of a secret benefit to the grantor. Neither the *bona fides* of the debt, nor the absence of fraudulent intent, nor ignorance of the legal consequence, will relieve the infirmity. Their condemnation rests on the inevitable tendency and effect to hinder, delay and defraud creditors.—*Sims v. Gaines*, 64 Ala. 392; *Hill v. Rutledge*, 83 Ala. 162.

[6.] The premises in question were purchased by Ruse from W. G. Little, who conveyed them March 20, 1885, to him and his wife. Mrs. Ruse has not paid, nor was it intended that she should pay, with her own means, one-half, or any part of the purchase-money. By an unbroken line of decisions, it is the settled law in this State, that a voluntary conveyance is fraudulent as to the existing creditors of the grantor, without reference to the intent of the parties, the financial condition of the donor, or the kind and value of the property donated.—*Seals v. Robinson*, 75 Ala. 363. Ruse having purchased the property, and having caused a half interest to be conveyed to Mrs. Ruse as a gift, the conveyance, so far as respects the liability of that interest to his existing debts, is the same in its nature and consequence as a voluntary conveyance by him to his wife, and the property may be subjected by his existing creditors, unless Leinkauf is a *bona fide* purchaser without notice, which he can not be when claiming under a deed ·denounced fraudulent by the law.

[7.] It appears, however, that Ruse paid only a small part of the purchase-money in cash, and for the deferred payments two notes for $1,250.00 each were given, signed

by himself and wife.   Leinkauf, by the deed to him, and
as part of its consideration, assumed to pay these notes.
At law, a deed constructively fraudulent is absolutely void,
but in equity the rule is more tolerant.   There is a clearly
defined distinction between the consequences of a convey-
ance fraudulent in fact, and of one only constructively fraud-
ulent.   A deed tainted with actual fraud, conceived and
executed with intent to hinder, delay or defraud creditors,
will not be permitted to stand for the purpose of reimburs-
ing the grantee any advances he may have made in conse-
quence of it; he will not be allowed to receive benefit from
his iniquitous act.   The rule is otherwise when the deed is
only fraudulent by operation of law, or the circumstances
attending its execution are merely suspicious.   A convey-
ance partly voluntary because of the inadequacy of its con-
sideration, if not made with fraudulent intent, may stand as
security for the consideration actually paid; and when only
constructively fraudulent, it will be upheld, for the purpose
of re-paying the grantee any advances made by him in
removing incumbrances from the property, as subservient
to the equity of the case.—*Potter v. Gracie,* 58 Ala. 303;
*Gordon v. Tweedy,* 71 Ala. 202; *Caldwell v. King,* 76 Ala.
149; *Gilkey v. Pollak,* 82 Ala. 503; *Campbell v. Davis,*
85 Ala. 56.

Whether or not Ruse procured the conveyance of one half
interest to his wife, or withheld it from record, with a fraud-
ulent intent, is immaterial.   If conceded, the equities of
Leinkauf are not affected thereby.   He had no connection
with its execution, no notice of such intent, and did not par-
ticipate therein.   His right to reimbursment depends on the
character of the deed made by Ruse and wife to him.   The
debt, as security for which it was executed, is shown to be
*bona fide.*   A deed was taken instead of a mortgage, as a
matter of convenience, and was suggested by a third party
as the proper mode, on the erroneous idea, that though a
married woman had no capacity to make a mortgage, she
might make an absolute conveyance of her statutory sepa-
rate estate, to secure or pay the debts of her husband.   Fraud
must be proved, not presumed.   Some of the surrounding
circumstances seem suspicious, but are not sufficient, the
*onus* of proof being on complainant, to justify the conclusion
of actual fraud.   The inference, that a deed absolute in form
was taken in order to obtain a conveyance supposed to be
valid as to Mrs. Ruse, and not with intent to defraud credi-

[Memphis & Charleston Railroad Co. v. Woods.]

tors, is more reasonable and consistent with honesty of purpose. The notes for the unpaid purchase-money constituted a vendor's lien, subordinate to which was complainant's right to subject the premises to the debts of Ruse. To make his title effectual, Leinkauf assumed to pay the purchase-money notes to the vendor. Complainant obtains full equity when he subjects the premises in the same condition in which they were when alienated by Ruse. He does not render equity, if allowed to avail himself of their freedom from the incumbrance effected by the grantee. Leinkauf's equity is to be substituted to the rights of Ruse's vendor. This can now be accomplished only by permitting his deed to stand for the purpose of reimbursing the amount paid or advanced by him to free the premises from the superior incumbrance, in consideration of either or both of the deeds made by Ruse and wife to Leinkauf. Whether any and what portion of the purchase-money due by Ruse to Little, his vendor, was paid or advanced, can be ascertained by a reference to the register.

The decree declares that complainant is entitled to have the property sold to satisfy his claims, and omits to provide for the reimbursment of the grantee. In this respect, it is erroneous. As the chancellor reserved the power to modify the decree on the final hearing, the other questions presented by counsel can be more properly and satisfactorily determined after the register's report shall come in.

Reversed and remanded.