[Jones v. Morris.]

# Jones *v.* Morris

### *Real Action for Recovery of Lands.*

1. *Grantee, what sufficient description of.*—The grantee in a deed must be so described that he can be certainly known; but a deed to the heirs of a named deceased person is sufficient and will pass the legal title; for the persons who are to take, can be identified by extrinsic testimony.

2. *Code, section 2948 of; construed.*—The purpose and scope of section 2948 of the Code, are to dispense with a seal as an essential element of a legal conveyance of lands, and to leave the sufficiency of every written instrument for that purpose, when executed in the prescribed mode, dependent on the intention of the grantor to be collected from the terms of the whole instrument; it was not the intention of the statute to blot out all the common law principles, which, for the security of the titles to real estate, required greater solemnity in the execution of such conveyances, than in the case of mere simple contracts not under seal.

3. *Same.*—Though a seal is not now essential to a conveyance of the legal estate in lands, the conveyance retains all the operation and effect of a sealed deed at common law, and the estoppel arising at common law out of the recitals or covenants of a sealed instrument, still attaches to the unsealed conveyance, executed according to the requirements of the statute.

4. *Same; effect of, as to deed by agent.*—The statute has not changed the common law rule, that a deed executed by an agent, to be valid and binding upon the principal, must, with certainty, appear to be the deed of the principal, and must be made and executed in his name; and since the statute, as at common law, a deed by a agent, which grants and covenants in the name of the agent alone, is not at law a valid execution of the power, and will not pass the legal title; though equities may arise thereby which a court of equity will protect.

5. *Will, construed.*—Testator died seized of certain lands, leaving two sons legatees and devisees under the will, which was duly probated. The will devised and bequeathed to each of the sons, John and James, one-half of the estate real and personal, for the term of their natural lives, with provision that if either died before arriving at age, or without lawful issue, the estate should go to the surviving brother. The will further provided, that the portion of the estate which shall be allotted to John, should "be sold by his guardian according to law, (the will not nominating any,) and the funds placed at interest." The executors named in the will, qualified, and they were appointed guardians of John, by the Probate Court. The executors under order of the Probate Court, purchased lands of one Broxon, pursuant to a parol contract made by the testator, taking title to the heirs as such. John, afterwards died intestate of full age, without lawful issue. The guardians, without order of any court, sold all the right, title and interest of John in all the lands,—*held :*

1. The will did not authorize the guardians to sell the interest or share of John in the Broxen lands.

2. Their sale of John's interest in the lands devised was als void—the will contemplating a sale only after division, and then under order of a court of probate or equity.

APPEAL from Butler Circuit Court.
Tried before Hon. JOHN K. HENRY.

[Jones v. Morris.]

This was a real action for the recovery of a tract of land containing nine hundred and twenty-one acres, in which the appellant was the plaintiff. The plaintiff claimed title as a devisee under the will of his father, Joseph Jones, deceased, and as the sole heir of his deceased brother, John E. Jones. The said will contained the following devises and provisions, which are its only parts now material: "Twelfth. I will and devise that my two sons shall inherit my estate in equal parts, (with the exception of the gold watch and chain given to my son John E.,) in the following manner and restriction which I now provide, to-wit: I will and bequeath to my beloved son, James A. Jones, one-half of my whole estate, both real and personal, of whatever kind or description the same may be, to have and to hold the same for and during the term of his natural life, and at his death the same is to descend to his lawful issue. In case he should die without issue, to his brother, John E. Jones. And I will and bequeath to my beloved son, John E. Jones, one-half of my whole estate, both real and personal, of whatsoever kind or description the same be, to have and to hold the same for and during the term of his natural life, and at his death the same is to descend to his lawful issue. In case he should die without issue, to his brother James A. Jones." The eleventh clause is as follows: "It is my will and desire, that should either of my children die before they arrive at age, or without lawful issue, then the survivor to inherit my whole estate." The tenth clause is: "It is my will and desire that the share or part of my estate which shall be allotted to my son, John E. Jones, shall be sold by his guardian according to law, and that the same be reduced to money, and that the funds be placed at interest." William F. Hartley and Edward Bowen were appointed executors of the will, but no guardian was appointed by the will for John E. Jones. Hartley and Bowen qualified as executors, and were, by the court of probate, appointed guardians of said John E. As executors, under a decree of the court of probate, in pursuance of a parol contract made by the testator in his life, they purchased and paid for with moneys in their hands, four hundred and twenty-five acres of the lands in controversy, taking the conveyance to the heirs of *Dr. Joseph Jones, deceased,* not otherwise naming or describing them. On the 2d September, 1859, the appellant, by an instrument under seal, duly acknowledged, appointed said Hartley and Bowen his attorneys, "to enter into, and take possession of all the real estate belonging to me, situated in the county of

[Jones v. Morris.]

Butler, and State of Alabama, and to bargain, sell, grant, convey, and confirm the whole, or any part thereof, for such price or sum of money, or on such terms, as they may think best, and for me and in my name, to make, execute and acknowledge, and deliver unto the purchaser or purchasers thereof, good and sufficient conveyances with, warranty of the same," &c. On the 14th November, 1859, the said Bowen & Hartley, as the attorneys of the appellant, and as guardians of said John E., then a minor, but without the order or decree of any court, authorizing them as guardians to make such sale, sold at public outcry after notice for thirty days by advertisement in a newspaper published in Butler county, the lands to James W. Kimbrough, for the sum of nineteen thousand five hundred and eighty dollars, and subsequently executed to him a conveyance. The sale was on a credit until the first day of January, 1861. The conveyance was executed on the 17th day of August, 1863, and recites that Hartley and Bowen were guardians of said John E., and attorneys in fact of the appellant, the sale aforesaid, and the payment of the purchase-money by Kimbrough, and after describing the lands, proceeds : " We, W. F. Hartley and Edward Bowen, guardians for John E. Jones, and attorneys in fact for James A. Jones, have this day for and in consideration of the said sum of nineteen thousand five hundred and eighty dollars, have this day bargained, sold and conveyed, and by these presents do bargain, sell and convey unto the said James W. Kimbrough, his heirs and assigns, all the right, title, interest and claim, which the said Dr. Joseph Jones, deceased, had in and to said lands at the time of his death, and that the parties above named, to-wit : James A. and John E. Jones had, or has, in or to said lands, as the legal heirs and legatees of said Joseph Jones, deceased, and we, the said W. F. Hartley and Edward Bowen, guardians of John E. Jones, and attorneys in fact for James A. Jones, will warrant and defend, so far as we are authorized to do, this right and title of said lands unto said Jame W. Kimbrough, his heirs and assigns forever. In witness whereof, we have hereunto set our hands and seals on this, the 17th day of August, 1863.

(Signed)                    W. F. HARTLEY, [seal]
                            EDWARD BOWEN, [seal]
Guardians of John E. Jones, and attorneys in fact of James
     A. Jones."

It was shown that Joseph Jones, the testator had a fee simple-title to all the said lands, except the tract bought by

the executors from Broxon; that John E. Jones, died intestate, of full age, never having married, and without other heirs than the appellant. The appellee Morris, derived title from said Kimbrough. The evidence being undisputed, the Circuit Court charged the jury, the appellant was not entitled to recover. To this charge, the appellant excepted, and it is now assigned as error.

WATTS & SONS, for appellants.

HERBERT & BUELL, *contra.*

BRICKELL, C. J.—Though it is not expressly stated as a fact, yet it seems to be assumed in the argument of the respective counsel, and is fairly to be inferred from the facts which are stated, that the testator had no other children, when his will was made, and at his death, than the appellant and his brother John E. It is an essential requisite of a deed valid and operative as a legal conveyance of lands, that the grantee should be named therein, or so described that he is capable of being distinguished from other persons. The maxim, *id certum est quod certum reddi potest,* will however be applied, and from a known relationship to others, the grantee may be described and distinguished. "A deed made to the *heirs-at-law* of a deceased person is good, because the persons who are to take can be ascertained by extrinsic testimony."—*Shaw v. Loud,* 12 Mass. 447. And a deed made to a partnership by the style of the firm, is legal in itself, and may be aided by parol proof, showing the individuals composing the firm.—*Lindsay v. Hoke,* 21 Ala. 542. The conveyance from Broxon passed the legal estate to the appellant and his deceased brother, and they were seized in fee of the premises in controversy—of that part of which the testator was seized, under the devises of the will—and of the Broxon lands under the conveyance from him.

2. It is a general principle, more strictly applied to contracts, or conveyances, to the validity of which a seal is necessary, than to simple contracts, that to bind the principal, the contract of his agent, must be made in his (the principal's) name. The common law requires that a deed executed by an agent, to be valid and binding upon the principal, must with certainty appear to be the deed of the principal, must be made and executed in his name. The names of principal and agent must appear in the execution of the deed, and it must appear that the grant and seal are those of the

principal. If the deed appears to be the deed of the attorney,—if he grants and seals, it is void at law, as to the principal.—*Carter v. Chaudron,* 21 Ala. 72; 3 Wash. Real Prop. 249. In respect to written contracts not under seal, the rule was not so rigidly applied, and as to this class of instruments, it is sufficient, "if the name of the principal appears in the instrument, and it is evident from the writing, as a whole, that the intention was that the principal, and not the agent, was the person to be bound, the principal alone will be bound, if the agent had the authority to make the agreement, although the instrument be signed in the agent's name only." *Roney v. Winter,* 37 Ala. 277; Story on Agency, § 160 a.. It is admitted that the conveyance to Kimbrough, is not in terms, or in the mode of execution, binding on the appellant, and sufficient to pass his estate in the premises, if the common law principle is applied. It is the agents or attorneys who grant, and their seals, not that of the principal is affixed.—*Parmers v. Respass,* 5 Mon. 562.]

But it is insisted the common law rule is, by statute, changed as to the conveyances of lands, and that no other or greater solemnity is now essential to convey the legal estate in lands, so far as this particular matter is concerned, than is necessary to the validity of any simple contract in writing. The statute referred to, reads as follows : "A seal is not necessary to convey the legal title to land, to enable the grantee to sue at law. Any instrument in writing, signed by the grantor, or his agent having a written authority, is effectual to transfer the legal title to the grantee, if such was the intention of the grantor, to be collected from the entire instrument."—Code of 1876, § 2948. The common law required more form and solemnity in the conveyance of lands, than in the transfer of chattels. The freehold could not pass, after conveyances by writing became the usual mode of transfer, unless the conveyance was under the seal of the grantor. A writing not under seal, would create equities, if founded on a valuable consideration, but of these courts of law could not take notice. The freehold was of greater dignity, than personal property, title to which could pass by mere words or by delivery. This principle of the common law was frequently recognized in this court, and instruments creating equities perfect in themselves, were declared insufficient to pass the legal estate, and therefore insufficient to support ejectment.—*Ansley v. Nolan,* 6 Port. 379; *Thrash v. Johnson,* ib. 458. The statute expressly dispenses with a seal as necessary to convey the legal title to enable the

grantee to sue at law; and by its terms meets and obviates the insufficiency of the instruments, which in the cases referred to was fatal to a recovery in ejectment, compelling suits in the name of the grantor to recover lands held adversely, and compelling a resort to equity, if the grantor would not voluntarily, or if he were dead, and could not, by a legal conveyance perfect the title. ·If these were the only words of the statute, its only effect would probably be, to enable the grantee of lands by an instrument not under seal, to sue at law, as if the conveyance was under seal—not dispensing with a seal as an indispensable element of a legal conveyance for all purposes. There are other words, however, indicative of a larger legislative intention, rendering effectual any instrument in writing, to transfer the legal title to lands, if such was the intention of the grantor to be collected from the entire instrument. Former sections of the Code prescribe with particularity, the essentials of conveyances for the alienation of lands, and of these, are an attestation by witnesses, or an acknowledgment of execution by the grantor before a proper officer, not essentials at common law.—Code of 1876, §§ 2145-6. When these several statutes are construed in connection, as they must be, we can not doubt, it was intended to dispense with a seal as an element of a legal conveyance of lands, and to leave the sufficiency of every instrument in writing, for that purpose, which is executed in the prescribed mode, dependent on the intention of the grantor as it may be collected from the terms of the instrument.

The rigid rule of the common law as to the execution of sealed instruments by agents, was purely technical, as was the rule that an authority to execute a deed or other instrument under seal, must be of equal dignity and under seal. Yet, when instruments under seal, have been executed by agents not having authority under seal—if the instrument would have been valid without a seal, and could, within the scope of the power of the agent, have been executed as an unsealed instrument, it does not follow in law or justice that it should not operate at all. The rule of most general application in the construction of written instruments, is, that the instrument must, if possible, be so interpreted as to uphold it, *ut res magis valeat quam pereat,* and that such meaning shall be given to it as will carry out to the fullest extent the intention of the parties. Such instruments, though in sealing them, the agent has exceeded his power, are permitted to enure and operate as the simple contract, the agent,

[Jones v. Morris.]

had authority to make.—*Ledbetter v. Walker,* 31 Ala. 175; *Randall v. Van Vechten,* 19 Johns. 60; *Evans v. Wells,* 22 Wend. 325; *Lawrence v. Taylor,* 5 Hill, (N. Y.) 107; *Worrall v. Munn,* 1 Seld. 239; *Tapley v. Butterfield,* 1 Metc. 515; *Long v. Hartwell,* 34 N. J. 116; *Stowell v. Elred,* 39 Wisc. 614; *Dickerman v. Ashton,* 2 Minn. 538. It was not necessary to the validity of the conveyance of the lands, which the appellant had given to his agents full authority to sell and convey, that they should, either in his name or their own, have sealed the instrument of conveyance. All that was necessary was an instrument in writing signed at the foot, attested or acknowledged, clearly expressing an intention to execute the power, and by the execution to bind the principal, and a transfer or conveyance of the lands, or of the estate therein of the principal, by apt words.

It was not to the seal alone, the common law attached the dignity, which required that with greater certainty, the instrument should appear to be the act and deed of the principal. The real distinction was between acts done *in pais,* and more solemn acts or instruments.—*Clarke v. Courtney,* 5 Peters 351. Though a seal may not now be necessary, to a conveyance of a legal estate in lands, yet, the instrument, *the deed of conveyance,* which it must still be termed, though shorn of its dignity of a seal, retains all the operation and effect of a deed sealed at common law. Its covenants may be as comprehensive, and whatever they may be, are as obligatory, and its recitals are as incapable of being gainsayed, as if it were sealed with the greatest formality. The estoppel which a sealed instrument, or its covenants, created at common law, is now claimed by the appellee, shall be attached to the conveyance by the agents of the appellant. And we can not doubt that the estoppel which at common law grew out of the covenants, or the recitals of a sealed instrument, attach now to an unsealed conveyance of the legal estate in lands. The statute is not so broad in its sweep as to blot out the common law principles which give security to conveyances of real estate. It would be fearful, indeed, if this was the operation of the statute, and the freehold in lands was not invested with greater dignity, than the fleeting ownership of chattels. While the clause of the statute we are considering is indicative of a larger legislative intention, than merely the dispensing with a seal as an element of a conveyance of the legal estate in lands, the whole scope of that intention is, that the intention of the grantor, as it is collected from the instrument, shall be carried into

[Jones v. Morris.]

effect. The Code, in many of its sections, parts and clauses, simply repeats and affirms the common law; and in this clause it is merely declaratory of the rule of universal application in the construction of written instruments, to which we have referred, that the intention of the parties shall be ascertained, and effect given to it, if possible. To avoid any supposition or construction, that this rule was infringed by dispensing with a seal, as an essential ingredient of the conveyance of the legal estate in lands, is the whole scope of this clause.

When the conveyance is executed by an agent, though it is sealed, and his authority is unsealed, it may enure and operate as if it were unsealed, and though its execution may not conform to the rigid rule of the common law, as to the execution of sealed instruments, it may be valid; it is still not an instrument or act *in pais*, as would be a mere simple contract. The operative words—the words of grant and conveyance, must clearly appear to be the words of the principal, and not the words of the agent, though he be described as agent. It must be the principal who by the agent grants and covenants, or recites facts, which by force of the recital, become incapable of contradiction. Such not being the terms of this conveyance, it was wholly inoperative as to the principal, the appellant, at law. It is not a valid execution of the power he conferred. Whether it created an equity depends on facts, of which the present record is silent; but if such facts existed, they are not available in a court of law. It is unnecessary to decide whether by its terms the conveyance is limited to a grant of the present estate of the appellant, and is incapable of operating on that which he acquired subsequently by descent from his brother, and as executory devisee under the will of his father. Not being his deed, it did not, and could not pass the present, or the estate subsequently acquired.

The only remaining question is, as to the effect of the sale by the guardians of John E. Jones.              •

3. Assuming the will of Dr. Jones conferred on the guardian or guardians of John E. Jones, who might, after his death, be appointed by the court, having jurisdiction, power to sell the share of his estate, which, on division, should be allotted to said John E., will not aid the sale and conveyance made by the guardians to Kimbrough. The power did not authorize a sale of the interest or share of John E. in the Broxon lands, acquired by the unauthorized purchase by the executors after the death of the testator. It was on the

[Jones v. Morris.]

estate devised and bequeathed by the will, the power operted; and not on lands subsequently acquired in which the testator had no estate, legal or equitable, or in which he may merely have contemplated acquiring an interest. A sale of the estate of John E. in these lands, by the guardian, not under the decree of a court of equity, is simply void, passing no title to the purchaser. The sale of his share or interest in the lands devised was also void—it was not made in accordance with the terms of the will, and if that is to be construed as conferring a power of sale, this sale was not a valid execution of the power. It is well settled in regard to the time of the sale, as well as to all other specific, express directions, that a power of sale must be strictly complied with, however unessential such directions may seem. 4 Kent, 365; 1 Sugden on Powers, 250. The testator contemplated as is shown by other parts of the will, than that which directs a sale by the guardian of John E., that his estate should be divided between his two sons. A sale of his entire estate without a division, by the guardian in conjunction with the appellant, is not contemplated. It is a sale after division, of the share of John E., and its conversion into money which is contemplated and directed. A sale before division was unauthorized, and was not in conformity to the power. The sale was to be made by a guardian, in whose appointment the testator could have no agency, and in whom he could not consequently repose any special confidence. Therefore, it is directed that the sale must be made *according to law.* It could not be made *according to law,* under our statutes then existing, unless it was made by the authority of a decree of a court of equity, or of the court of probate. The guardian by virtue of his office, was without authority to sell the personal or real estate of the ward. The person who was to sell, being unknown to the testator, and it being impossible for him to anticipate on whom the relation of guardian would devolve, the direction that the sale should be made *according to law,* fairly construed, imports that a sale, in the mode of sales by guardians, with which the testator was familiar, and which had the sanction of a court, was the sale he contemplated—not a sale, resting in the discretion of a person unknown to him, without the sanction of a court. If the sale was under the decree of a court, greater security would be afforded the ward for its fairness, and that its proceeds would be preserved for his benefit. If it was intended, as is suggested by the counsel for the appellee, that by the direction the sale should be made *according to law,* only a

public sale, upon the notice, prescribed for sales by guardians, was intended, the indiscretion, or imprudence, is imputed to the testator, of entrusting a power to an unknown person, that men often hesitate to commit to nearest relations, or the best known friends.   The sale by the guardians, of the estate of John E., was invalid, and on his death, the estate he had in the Broxon lands descended to the appellant as his heir at law, and his estate in the other lands passed to appellant, under the executory devise in the will of the testator.

The result is, the charge given by the Circuit Court was erroneous, and the judgment must be reversed and the cause remanded.