# Halsey v. Connell, Green & Co.

*Bill in Equity to vacate a General Assignment, and to set aside a Sale of Property as fraudulent and void.*

1. *General assignment; fraud of assignor, when presumed, and when will not avoid assignment.*—When in a general assignment for the benefit of creditors, there is a reservation of a benefit to the debtor which,

[Halsey v. Connell, Green & Co.]

from the nature of the transaction, does not result to him, or there are conditions or stipulations having the immediate tendency to hinder and delay the creditors, fraud is apparent on the face of the instrument, and the acceptance of the trust by the assignee or by a part of the creditors will not impart to it validity as against dissenting creditors; but if on its face the assignment is free from fraud or illegality, and bears evidence that it is beneficial to the creditors, the assent to and acceptance by the creditors is presumed, and it can not be avoided because of the fraud of the assignor, if neither the assignee nor creditors had knowledge or notice of such fraud at the time of the acceptance.

2. *Same; same*—A general assignment for the benefit of creditors, which is valid on its face, will not be set aside at the instance of dissenting creditors, because of the fraud of the assignor, if the assignment was in fact beneficial to the creditors, and neither the assignee nor creditors had knowledge or notice of the fraud.

3. *Fraudulent conveyance; burden of proof*—A conveyance from an insolvent debtor, executed after the contraction of the debts owing attacking creditors and while they were existing and unpaid, is *prima facie* fraudulent, and the burden of proving that such conveyance is founded on a valuable and adequate consideration rests upon the grantee claiming thereunder.

4. *Same; relationship not a badge of fraud.*—Where a conveyance is sought to be set aside as fraudulent and void, the mere fact that there was a kinship existing between the grantor and grantee is not a badge of fraud, and does not, of itself, raise the presumption of fraud; but it is a mere circumstance, dependent for its value upon the other evidence and circumstances of the case, which serves to throw light on the transaction.

5. *Same; conveyance from father to son; when valid against creditors.* A conveyance by an insolvent debtor to his son, in payment of a *bona fide* debt due the son for services actually rendered, under an agreement for a specified and reasonable rate of compensation, is valid as against other creditors of the said debtor.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. THOMAS COBBS.

All the facts of the case are sufficiently stated in the opinion.

D. W. SPEAKE, for appellants.—Assignment for the benefit of creditors is always favored by the law, for the reason that it effects the *desideratum* of equality among creditors.— *Reynolds v. Collins*, 78 Ala. 98. And an assignment for the benefit of creditors must be so construed as to make the instrument available in all of its parts and for all of its purposes, rather than a con-

struction which would defeat it in any respect.—3 Brick.
Dig., 48, § 1; *Bank v. Dunn*, 67 Ala. 381; *Evans v.
Winston*, 80 Ala. 337; *Napier v. Foster*, 80 Ala. 339.

O. KYLE and THOS. G. JONES, *contra.*—1.  If fictitious
assets or fictitious liabilities are purposely included in
the deed of assignment, it is void.   Or if the assignor
purposely fails to include assets that should have been
included in the deed of assignment, it is also void.
Wait on Fraud. Conveyances, (2d ed.), 345; *Perry Ins.
Co. v. Foster*, 58 Ala. 502; *Probst v. Welden*, 46 Ark. 409;
*Shults v. Hoagland*, 85 N. Y. 464; *Waverly Bank v. Hal-
sey*, 57 Barb. (N. Y.) 249; *Craft v. Bloom*, 59 Miss. 69;
*Talcott v. Hess*, 31 Hun. (N. Y.) 282; *Hays v. Doane*, 11
N. J. Eq. 86; 1 Amer. & Eng. Encyc. of Law, n. 2, p.
866; *Hall v. Heydon*, 41 Ala. 242; *Marriott v. Givins*, 8
Ala. 712.
2.  The assignment was made pending suit against S.
L. Halsey with a full knowledge of the facts by both S.
L. Halsey and John F. Halsey, and that S. L. was
wholly insolvent; under such circumstances the assign-
ment is void.—*Knight v. Packer*, 12 N. J. Eq. 214; *Kim-
ball v. Thompson*, 50 Amer. Dec. 799; *Van Nest v. Yoe*, 7
N. Y. Ch. Rep. 217; *Ford v. Johnston*, 7 Hun. 568.   If
the fraud be found upon the face of the instrument, or
be disclosed by the evidence, the effect is the same; the
deed will be void.—*Rothenbergh v. Bradley*, 10 So. Rep.
922; *Marriott v. Givins*, 8 Ala. 712.   If the deed of as-
signment be void for any of the reasons urged against
it; if in one instance the court concludes that Halsey
willfully and intentionally decreased his assets, or in-
creased his liabilities, or either, then, the entire deed is
void.—*Selleck v. Pollak*, 10 So. Rep. 249; *Russell v. Winne*,
37 N. Y. 591; Wait on Fraud. Convey. (2d ed.), § 194.

BRICKELL, C. J.—The original bill was filed by the
appellees, creditors of Samuel L. Halsey, having for its
object, the vacation because of alleged fraud, of an in-
strument purporting on its face to be a general assign-
ment of his property and effects, for the equal security
and benefit of his creditors; and further, the vacation of
a conveyance of real estate, he had executed to his son,
John F. Halsey.   The chancellor rendered a decree from
which the appeal is taken, vacating the conveyance to

John F. Halsey, and vacating the assignment as to the appellees, entitling them from the property and effects assigned, to priority of payment over all other creditors.

The ground on which the chancellor proceeded in reference to the assignment, is, that the assignor had deliberately and intentionally, not from mere error or inadvertence, omitted or reserved valuable assets from the schedule annexed to and forming part of the assignment, and had introduced therein as debts or liabilities, claims or demands, which were unreal and simulated; but of all notice or knowledge of these facts, he acquits the assignee and the creditors, the beneficiaries. A general assignment, by which is understood, a transfer to an assignee of all the property, or substantially all of the property, of a failing or insolvent debtor, for the benefit of his creditors at large, not making discrimination or preference among them, is a security, it is the policy of the law to encourage and favor. As has been often said of them, they are in practical application by the debtor voluntarily, of the broad maxim that equality is equity, and in their execution, he does an honest, just act, in the discharge of moral duty.

Such an assignment, may be resorted to as a device to hinder, delay and defraud creditors, and the vitiating intent may be manifested on its face. If terms, provisions, or stipulations, are introduced, in direct conflict with known and settled rules of law—if there be the reservation of benefits to the debtor which do not from the nature of the transaction result to him, or conditions or stipulations, the immediate tendency of which is the hinderance and delay of creditors—the fraud is apparent on the face of the instrument, and the acceptance of it by the assignee, or by a part of the creditors, will not impart to it validity as against dissenting creditors.— Burrill on Assignments, (5th ed.), § 343; 1 Bric. Dig. 129, § 82. But if on its face, the assignment is free from all infirmity, from fraud or illegality, bearing evidence that it is beneficial, not prejudicial to creditors, the assent to and acceptance of it by creditors is presumed, and it cannot be avoided because of the fraud of the assignor, of which neither they, nor the assignee, had knowledge or notice, at the time of the acceptance. 1 Brick. Dig. 130, § 96; 3 Brick. Dig. 519, §§ 156-57; *Truss v. Davidson*, 90 Ala. 359; *Emerson v. Senter*, 118

U. S. 3.   We say, if neither the  assignee nor the  creditors  had  knowledge or  notice of the fraud supposed to infect the assignment, for in this case, notice or  knowledge cannot be imputed to either.   We do not intend to say, that notice to, or knowledge of, the assignee alone, would  avoid  the  assignment  as to ignorant, innocent creditors ;  that  question  is not before us, and we must not be u.:derstood as expressing any opinion in reference to it.

We have not, as there are in many of the  States,  the decisions in which are referred to by the  counsel for the appellee,  statutory  regulations declaring  the  constituents of general assignments, requiring  that schedules of the  property  and  effects  transferred,  and of the debts they are intended to secure, shall form part of. or be annexed to them.   It is customary to annex  such  schedules, but no high degree of  accuracy  or  precision in describing the property or effects conveyed, or the debts intended  to  be  secured,  has  been  observed or exacted. Without any special enumeration of the debts, or special description of the property, the assignment is valid; generality, or error in the description of one or the other, has not been  supposed  to vitiate it—parol  evidence is admissible to give application to the generality, or to cure the error of description.—*Graham v. Lockhart*, 8 Ala. 9; 1 Brick. Dig. 129, §§ 84-5.   It is not  improbable, if it were necessary to analyze the evidence closely,  that the fraud imputed would not be found to exist as matter  of fact; but that is not now necessary, as there is no  room or reason for visiting it on the assignee, or creditors,  if it exists.

The conveyance to John F. Halsey, having been executed after the debts  owing the appellees were created, and  while  they were  existing  unpaid, to support the conveyance, the burden of proving that it was founded on a valuable and adequate consideration rests upon him. The consideration recited  is pecuniary, presently paid; but a kindred consideration, and  payment of a debt is  a kindred consideration, may be shown to support it.

A debtor though insolvent, has a right of  preference among his creditors, and at the time of the  transaction, by a sale and  conveyance, could devote the whole or  a part of his  property,  to the  payment of one creditor, though the known effect was the  disappointment of  all

other creditors. Good faith, however, must mark the transaction ; there must be a real debt, in amount equalling, or not materially disproportionate to the reasonable value of the property ; the real purpose must be the absolute payment of the debt, without the reservation of any benefit to the debtor. When the transaction is assailed by creditors, the primary inquiry is into the consideration—whether there was to support it a real, existing debt.

The relationship, that of father and son, existing between the grantor and the grantee, is much relied upon by the appellees, and seems to have been of controlling influence with the chancellor, in the determination of this inquiry. There are some of our decisions, to which we are referred by the counsel for the appellees, while not asserting that relationship is a badge of fraud, assert that when it exists, higher or clearer, or more convincing evidence of the consideration, must be given. The more recent decisions have departed from this doctrine, declaring that relationship is a mere circumstance, dependent for its value, upon other circumstances, which serve to throw light upon the transaction.—*Teague v. Lindsey*, 106 Ala. 266 ; *Troy Fertilizer Co. v. Norman*, 107 Ala. 585 ; *Goetter v. Norman*, 107 Ala. 667.

The debt, payment of which is alleged as the consideration of the conveyance, was contracted for the services of the grantee, as a clerk and salesman for the grantor continuously from 1887 to the execution of the conveyance, on the 5th, November, 1892. The rendition of the services is an uncontroverted fact, and that the compensation agreed to be paid does not exceed the reasonable value of the services, is a fact proved by disinterested witnesses. There was no agreement as to the amount of compensation until the closing days of December, 1889. Then, the health of the grantor being precarious, and, in so far as appears not being embarrassed by debt, he was desirous of having it ascertained and settled. The amount of the compensation for past services was agreed upon, and it was agreed that for future services, the grantee should receive twenty-five dollars per month and his family expenses. For the compensation for past services, three separate promissory notes, each payable at one day and for varying amounts and dates, were given. The varying of the

dates, it is apparent, was intended for no other purpose than to signify, or designate that the note was given for the compensation of a particular year. This seems the reasonable interpretation of the evidence ; it is consistent with good faith and honesty of purpose, and unless fraud and dishonesty is presumed, this interpretation must be adopted. It is urged, that it is incredible, that the grantee, with the responsibilities of a family resting upon him, should for three years of his young life, have rendered services to his father without any definite agreement for compensation. But he and his family were residing with the father, and from him support and maintenance were drawn. Standing in this relation and under these circumstances, it is not matter of surprise, or of just suspicion, that the son relied with confidence upon the integrity and affection of the father, to make him just compensation for his services whenever he should demand it.

We have carefully considered the evidence of the parties, the grantor and the grantee, and the criticisms to which counsel subject it. We do not find in it, the conflicts and contrarieties attributed to it. The criticisms indulged are directed to the inadvertence or inaccuracy of expression of the witnesses, rather than to real inconsistencies in their evidence.

The sale of the horse and buggy, and the payment of one hundred dollars in money to the son, was doubtless a part of the transaction in which the conveyance of the real estate originated. We mean that it was contemplated and consummated at or about the same time. And it is doubtless true, that the execution of the general assignment was then contemplated. We do not read the evidence of father and son as in denial of the fact that the execution of the assignment was in contemplation, but that the father was reluctant to resort to it, and was inclined to defer its execution as long as practicable, without permitting some creditors to obtain priority over all others. The horse and buggy and the hundred dollars, the father could have claimed as exempt to him by law, without offending the rights of any other creditor than his son, for so far as appears, the son only, had written evidence of debt, containing waiver of exemptions. The general assignment was executed, the father making no claim of exemption, and

the transaction in its entirety, is its own best expositor, acquitting the parties of fraudulent purposes.

The result is, the decree of the chancellor must be reversed, and decree rendered dismissing the bill, and the appellees must pay the costs of appeal, and the costs of the court of chancery.

Reversed and rendered.