# Waddle *v.* Great Southern Phos. Co.

### *Bill to Declare a Deed Fraudulent.*

(Decided November 20, 1913. 63 South. 462.)

1. *Fraudulent Conveyances; Creditor's Action; Burden of Proof.*— Where the action is by the creditor to set aside a conveyance because fraudulent as to him, and it is shown that complainant's debt existed at the time of the conveyance, that judgment had been recovered thereon, execution issued returned unsatisfied, and that the debtor is insolvent, the burdent of proof is then on the grantee to show that the sale was fair and in good faith, that the consideration was a valuable one and not materially less than the fair value of the property, whether the alleged consideration was a present cash consideration or an antecedent debt.

2. *Same; Conveyances Between Near Relations.*—Where the conveyance attacked on the ground of fraud is between such relations as husband and wife, or father and son, it is subjected to a closer scrutiny than if between strangers.

3. *Same; Adequacy of Consideration.*—Where an insolvent debtor with intent to hinder, delay or defraud creditors conveys property upon a present consideration to a person who knows of such intent, or is in possession of such facts, upon proper inquiry, as would lead persons of ordinary intelligence or prudence to a knowledge thereof, the conveyance is fraudulent and void as to creditors regardless of the adequacy of price.

4. *Same; Preference to Creditors; Intent.*—The conveyance by an insolvent debtor to a creditor in payment of an antecedent debt for

an agreed price not greatly less than its value, without reservation of benefit to grantor is not fraudulent, and the intent of the parties will not be inquired into.

5. *Same; Setting Aside; Standing as Security.*—When property is conveyed in payment of an antecedent debt or upon a present valuable consideration, but the consideration is inadequate, and it is attacked by existing creditors for fraud, it will be permitted to stand as security for the actual consideration, unless there was fraudulent purpose on the part of the grantor, and unless the grantee knew thereof when he accepted the conveyance or had possession of such facts as would have led a reasonably prudent and intelligent man to the discovery of such fraudulent intent, upon proper inquiry.

6. *Same; Bill; Sufficiency.*—A bill to set aside a fraudulent conveyance of all of the property not exempt of a person indebted at the time to complainant, the complainant thereafter recovering judgment, which alleges that it was made with the purpose of delaying or defrauding complainant and accepted by the grantee with knowledge of and for the purpose of aiding in such fraudulent purpose, contains equity.

7. *Same; Evidence; Sufficiency.*—The evidence stated and examined and held to show that the conveyance was made to hinder, delay or defraud complainant and that the wife knew of such purpose when she accepted the deed, and hence, that it was fraudulent and void as to complainant.

APPEAL from Lauderdale Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by the Great Southern Phosphate Company against M. J. Waddle to set aside a conveyance of land as fraudulent and void. Decree for complainant and respondent appeals. Affirmed.

PAUL HODGES, and A. A. WILLIAMS, for appellant. Where the payment of a valuable consideration is shown the burden is on complainant to show the existence of a fraudulent intent, and knowledge on the part of the grantee.—141 Ala. 621. This burden has not been discharged.—*Chandler Bros. v. Higgins,* 156 Ala. 511. The earnings of the wife being her separate estate, or property coming to her by descent when having been converted by the husband, creates such a debt as will be a valuable consideration.—82 Ala. 334. Under such conditions the conveyance will not be set aside as fraud-

ulent unless the grantee participated in or knew of the fraudulent intent.—148 Ala. 353. The bill fails to make out a case and the proof fails to sustain the bill.—*Pippin v. Tapio,* 148 Ala. 359; *Simmons v. Shelton,* 112 Ala. 291; *Allen v. Riddle,* 141 Ala. 621. The law conferring upon an insolvent debtor the right to choose his creditor does not require that he discriminate against his near relations.—*Micou v. Bank,* 104 U. S. 543; *Goetter v. Norman,* 107 Ala. 667. The occasion did not arise when the burden shifted to the grantee to show adequacy of consideration.—*Chipman v. Glennon,* 98 Ala. 263; *Smith v. Collins,* 94 Ala. 394; *Ledbeatter v. Davenport,* 45 South. 467.

MITCHELL & HUGHSTON, for appellee. Complainant having established certain facts which prima facie entitled him to a recovery (*Mobile S. Bank v. McDonald,* 89 Ala. 434; *Ober & Sons v. Phillips, Buttorf Co.,* 145 Ala. 25; *Lightman v. Goldstein,* 164 Ala. 660) it is then incumbent on the grantee to establish that the last alleged past indebtedness forming the consideration was a valid and enforceable debt.—*Morrow v. Campbell,* 118 Ala. 330. Even then the conveyance may be defeated by showing a reservation of benefit to the grantor.—*Moore, et al. v. Penn, et al.,* 95 Ala. 200; *Lehman-Durr Co. v. Greenhut,* 88 Ala. 478, and authorities supra.

DE GRAFFENRIED, J.—In the case of *Brunson, et al. v. Rosenheim & Son,* 149 Ala. 112, 43 South. 31, this court said: "Proof of the existence of complainant's debt before and at the time of the alleged conveyances and the complainant's judgment, and the issue of execution thereon with the return of 'no property found,' and the insolvency of the respondent debtor, was without conflict. The facts being shown, the bill, among other

allegations as to the mala fides of the transaction assailed, charging that the consideration of the conveyances was fictitious and simulated, the *burden of proof* was upon the respondent's vendees to show that the sales to them by the respondent Brunson were *fair* and made *in good faith,* and also upon them to show that the consideration was a valuable one, and the price paid for the lands was not less than their fair value."

In the above-quoted rule the court said in the above case that the burden was upon the vendee, under the facts hypothesized, to show that *"the price paid for the lands was not less than their fair value,"* meaning by the quoted and italicized words that "the price paid for the lands was not materially less than their fair value."—*G. Ober & Sons Co. v. Phillips-Buttorff Mfg. Co.,* 145 Ala. 625, 40 South. 278.

2. In the case of *Wimberly, et al. v. Montgomery Fertilizer Co.,* 132 Ala. 107, 31 South. 524, this court said: "Where the contract is between near relations, as between husband and wife, father and son, and the like, it will be subjected to a closer scrutiny * * * than if the parties to it were strangers." The same rule was announced in *Seitz v. Mitchell,* 94 U. S. 580, 24 L. Ed. 179, in the following language: "Such is the community of interest between husband and wife. Such purchases are so often made a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors and the wife *there is,* and there should be, *a presumption against her* which she must overcome by affirmative proof."

3. The two well-known rules which we have above quoted apply in *all* cases where a conveyance is attack-

ed for fraud as between the grantor and the grantee, whether the alleged consideration moving from the grantee to the grantor is a *present* or a *past* consideration; i. e., whether the alleged consideration is a *cash* consideration paid by the grantee to the grantor, or whether the alleged consideration is the payment of a *debt* alleged to be due by the grantor to the grantee.

In the instant case the alleged consideration of the conveyance here attacked for fraud is the payment of an alleged debt which it is claimed was due by the husband, the grantor, to the wife, who is the grantee. The two above-quoted rules, therefore, apply in this case in their full force. ·

4. When an insolvent debtor, with the intent to hinder, delay, or defraud his creditors, makes a conveyance of property upon a *present* consideration, and the purchaser *knows* of such intent, or is in possession of such facts as would, upon proper inquiry, lead a person of ordinary intelligence and prudence to a knowledge of such intent, *then* such a conveyance is fraudulent and void as to creditors without regard to whether the price paid *was* or *was not inadequate.*—3 Mayf. Dig. p. 853, subd. 44, and authorities cited.

The above well-known rule has no applicability to this case because the alleged consideration of the conveyance *here* attacked is a *past,* and not a *present,* consideration.

When a sale of property is made by an insolvent *debtor* to a *creditor,* in *payment* of an antecedent debt, if the agreed price of the property is not greatly less than the value of the property, and no benefit is reserved by the grantor in the property conveyed, if the sale is absolute and unconditional, then such a sale is *not fraudulent;* such an act, *when attacked for fraud,* is considered by the law as legal, and the law will not in-

quire into the intent of parties who do that which they have the legal right to do.—*Hodges Bros. v. Coleman & Carroll,* 76 Ala. 103.

6. When, however, a conveyance of property is made in payment of an antecedent debt, and the consideration is *inadequate,* then such a conveyance should, if attacked by an existing creditor as being void for fraud, be allowed to stand as security for the consideration actually paid, *unless* there was, on the part of the grantor when he made the conveyance, a fraudulent purpose, and unless such fraudulent purpose of the grantor was known to the grantee when he accepted the conveyance, or unless the grantee had possession of such facts as would, upon a proper inquiry, have led a reasonably prudent and intelligent man to the discovery of such fraudulent intent of the grantor.—3 Mayf. Dig. p. 851, § 29, and authorities cited. This last rule applies in cases where the consideration is a present, valuable consideration, as well as where it is in payment of an antecedent debt.—*Caldwell v. King,* 76 Ala. 149.

7. The bill of complaint in this case was filed by the Great Southern Phosphate Company, a creditor of R. P. Waddle, against the said R. P. Waddle and his wife, M. J. Waddle. The bill alleges that on the 25th day of March, 1910, the said R. P. Waddle was indebted unto said phosphate company, which is a corporation, in sums aggregating about $1,300, and that said indebtedness was by said phosphate company reduced to judgment against the said Waddle on or about March 25, 1912; the judgment amounting to $1,568.57 and the costs. The bill further alleges that when said debt was contracted the said Waddle owned 105 acres of land which was *all* of his property except that which was exempt to him by law. The bill further alleges in substance that on the 18th day of February, 1911, the said

Waddle, who was then insolvent, with the purpose of hindering, delaying, or defrauding the complainant, executed and delivered to his said wife, M. J. Waddle, a conveyance to said property, and that said M. J. Waddle accepted the said conveyance with a knowledge of the fraudulent intent of her said husband and for the purpose of aiding him in defrauding complainant. The bill prays that said conveyance be declared fraudulent and void as to complainant, and that the said lands be subjected to the payment of its said debt. The bill, of course, contains equity.

8. The theory of the respondent was and is that R. P. Waddle did not make the conveyance for the purpose of hindering, delaying, or defrauding the complainant, and that if he had such purpose the respondent knew nothing about it, was in the possession of no facts putting her on inquiry about it, and that therefore the respondent accepted the conveyance in good faith. The further theory of the respondent was and is that her said husband obtained from her certain moneys with which to buy or pay for the said land, and that he did pay for the said land with her money with the understanding that he was to convey the said lands to her, and that the said lands were conveyed to said respondent pursuant to *that* agreement. The further theory of the respondent is that even if her said husband did not use the money in paying for the land, it being her information that he had so used it, nevertheless that he owed her the said money, and that he conveyed the land to her in payment of the debt, and that the value of the land was not greater than the amount of the debt. In other words, that she bought the lands from her husband, and that the consideration of the conveyance was the satisfaction of an antecedent debt; the

value of the land and the amount of the debt being approximately the same.

9. In support of the theory that the husband did not, when he made the conveyance, intend to hinder, delay, or defraud the complainant, the husband claims that he did not then *know* or *think* that he owed the complainant anything.

It seems that the Lamb's Ferry Union Warehouse & Gin Company was a corporation which was organized by farmers residing in the neighborhood of said R. P. Waddle, who was president of said corporation. It also appears that this corporation bought fertilizers on credit from complainant and sold the fertilizers to the farmers in the community on credit, taking their notes for the debts so contracted. These farmers' notes were by the said corporation transferred to complainant as collateral security to secure the indebtedness owing by said corporation to complainant. When these collateral notes matured, the proceeds, or at least the proceeds of some of them, were *not* forwarded to complainant. R. P. Waddle claims that he, and possibly some of the directors of said corporation, with the knowledge and consent of the complainant, used the proceeds of the collaterals in payment of *other* debts of said corporation. Complainant, on the other hand, claims that it did *not* give its consent to such use of said money and knew nothing about it.

Without regard to the question as to who is right on this subject, we think that it plainly appears that complainant, on and for some time prior to March 25, 1910, was pressing said corporation to pay its said debt, and that pressure was strongly brought upon R. P. Waddle, as president of said corporation, to see that said debt was paid. We also think that it is clear that the indebtedness was finally adjusted by the execution, by

said corporation, of three notes on March 25, 1910, each for the sum of $432, one due November 25, 1910, one due December 1, 1910, and one due January 7, 1911, with R. P. Waddle, R. C. Miller, P. B. White, and J. P. Lentz as sureties thereon. The original notes appear in the transcript, and a careful inspection of them convinces us that the above-named parties not only signed the said notes as sureties but that each of them, when he signed the note, *knew* that he was personally binding himself to pay the debt. Of course the judgment which was in March, 1912, rendered personally against R. P. Waddle, on said notes, precludes him from denying his liability thereon, but we think that the notes themselves show on their faces that R. P. Waddle must have known, when he signed the notes, that he was binding himself personally to the payment of the debts which they represented. This phase of the case, we think, is made extremely plain when the circumstances surrounding the execution of the notes, as shown by the testimony, are considered.

10. We also think that the evidence shows that Mrs. M. J. Waddle *knew* that her husband was personally bound for said debt *before* he executed and delivered to her the conveyance which we have under consideration. In fact, the history of this transaction convinces us that the conveyance by Mr. Waddle to Mrs. Waddle was made to hinder, delay, or defraud complainant, then an existing creditor, and that Mrs. Waddle knew of this purpose when she accepted the deed.

It appears that the said Lamb's Ferry Union Warehouse & Gin Company owed Blanch K. Weaver a debt which was secured by a mortgage on *all* of the property of said company, and that on the *14th* day of February, 1911, a deed, signed, among others, by Waddle and *wife*, was acknowledged and delivered to said Blanch K.

Weaver, conveying to her *all* of said property of said company in satisfaction of said mortgage indebtedness. H. C. Warren was the notary public who took the acknowledgment of said Waddle and wife to said deed, and, while he was at their home attending to that business, Waddle, in the presence of his wife, instructed the said Warren to prepare a conveyance from him to his wife conveying *all* of *his* property, real and personal, and to recite in the deed that the consideration of the deed was $4,000. Warren then and there on said February 14th, at Waddle's home, began to prepare the deed, but for lack of time did not finish it on that day. It will be noticed that, when Waddle instructed the notary to prepare the above deed, the said Lamb's Ferry Union Warehouse & Gin Company had just parted with all of its property and still *owed* the three notes above described and upon which Waddle was a surety.

*Before* the above-mentioned deed from Waddle to his wife was completed by said notary, Waddle saw the notary and had him to write a *new* deed to his wife. This new deed conveyed *all* of Waddle's land, viz., the 80 acres homestead, and the 105 acres under discussion, and all of the personal property of Waddle, and recited a consideration of *$1,800*. This new deed was executed on February 16, 1911, and was at once filed for record in the county in which the lands are situated. On the 18th day of February, 1911, *another* deed was executed by said Waddle to his said wife, reciting a consideration of *$1,800*, and conveying only the 105 acres. In other words, this *last* deed recited the *same* consideration as the deed of February 16, 1911, but conveyed less property. The property *left out* of the *last* deed was the *homestead* and the *personalty*. The *personalty* was worth less than *$1,800*, and, as the notes above de-

scribed are *not waive notes,* the personalty and the homestead were *exempt* from their payment.

Mr. and Mrs. Waddle offer explanations as to these matters but they are not satisfactory. In the light of the admitted surrounding circumstances, the writings themselves with reasonable certainty show why they were made. The truth about this matter is that we are inclined to the view that Mr. Waddle probably felt that he had the moral right to try to save his 105 acres of land from the wreck of the Lamb's Ferry Union Warehouse & Gin Company, and that his wife, being of the same opinion, accepted the conveyances in the hope that the land could be thus saved. But Waddle was a *surety* on the *notes;* when he made the conveyance he was *insolvent;* and neither courts of law nor courts of equity can uphold this transaction unless the indebtedness due Mrs. Waddle by her husband, weighed, not in diamond scales, but in the scales of ordinary common sense, approximated the reasonable value of the lands conveyed. —*G. Ober & Sons Co. v. Phillips-Buttoff Mfg. Co.,* 145 Ala. 625, 40 South. 278. "The price, however, must be reasonable, and if the debt is materially less than the value of the property conveyed in settlement thereof, the law stamps the transaction as fraudulent as against the other creditors."—*G. Ober & Sons Co. v. Phillips-Buttoff Mfg. Co., supra.*

11. On the question as to whether the conveyance under discussion was or was not made by Mr. Waddle with the intent to hinder, delay, or defraud complainant, and as to whether Mrs. Waddle did or did not accept the conveyance with knowledge of such intent on the part of her husband, there is much conflict. On the question as to the value of the land conveyed, there is also much conflict. In our opinion the preponderance of the evidence in this case shows that the value

of the land conveyed was materially greater than any indebtedness which Mrs. Waddle has established by the testimony that her husband owed her. We are not of the opinion that Mrs. Waddle has established that her money paid for the 105 acres; neither are we of the opinion that the conveyance from J. P. Lentz and Sallie B. Lentz, dated the 24th day of August, 1908, conveyed to Mrs. Waddle any interest whatever in the said 105 acres of land. The original deed is in the record; and, after a careful inspection of that deed and a careful consideration of the evidence touching the execution and delivery of that deed, we are of the opinion that the name of Mattie Waddle did not appear in that deed when it was delivered.

The indicia of fraud in this case are many, and we deem it unnecessary to refer further to them. Under the rules which we have quoted at the beginning of this opinion, our duty seems plain. In our opinion the deeds which were executed by Mr. Waddle to Mrs. Waddle on February 16, 1911, and on February 18, 1911, were both, in so far as the 105 acres of land are concerned, fraudulent and void in so far as the said indebtedness of complainant is concerned. In our opinion, therefore, without further discussion of the facts, the decree of the court below should be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, J.J. concur.