147 So. 152

### ROGERS v. CONAWAY.
### 7 Div. 170.

Supreme Court of Alabama.
March 16, 1933.

Hugh Reed, of Center, for appellee.

F. M. Savage and Irby A. Keener, both of Center, for appellant.

KNIGHT, Justice.

The appellee, Conaway, as trustee of the bankrupt estate of J. B. Rogers, exhibited his bill of complaint in the circuit court of Cherokee county against Della Rogers and her husband, J. B. Rogers, in and by which he seeks to have declared fraudulent and void, as against existing creditors of said J. B. Rogers, a certain conveyance executed by the husband to the wife. The complainant avers that, at the time of the execution of said deed, the grantor therein was greatly indebted to various and sundry persons, and that among the number were H. C. Snead & Co.; and that on the day of the date of the conveyance H. C. Snead & Co. had filed their suit in the circuit court of Cherokee county against said J. B. Rogers, in which a judgment was thereafter rendered in favor of the plaintiffs in an amount in excess of $1,700. The judgment was rendered on February 4, 1931, and on or about the 23d day of May, 1931, the said J. B. Rogers filed his petition in the District Court of the United States for the Northern District of Alabama, praying to be adjudicated a bankrupt. The date

of the conveyance attacked is December 31, 1930.

The complainant charges that the conveyance by said Rogers to his said wife "was voluntary and without consideration, and was in fraud of the rights of said H. C. Snead and company, and other existing creditors" of said Rogers, and was made with the intent on the part of both parties to said deed, and with knowledge of the financial condition of said J. B. Rogers, for the purpose of hindering and defrauding the creditors of the said J. B. Rogers in general, and the firm of H. C. Snead & Co. in particular.

The defendants filed separate answers to the bill, each denying the charges of fraud, and each asserting that the conveyance to the wife was made in exchange for other lands owned by the wife, which she at the time conveyed to the husband; and for "other valuable considerations," but which were not set forth.

Upon the hearing of the cause, the court decreed that the complainant was entitled to the relief prayed for, and decreed that the said deed from J. B. Rogers to his said wife was fraudulent, void, and that the lands conveyed by the deed were subject to the payment of the debts of said J. B. Rogers, existing at the time the deed was executed, and ordered the register to sell the same.

From that decree this appeal is prosecuted by the said Della Rogers.

The evidence leaves no room for doubt that at the time of the execution of the deed by Rogers to his wife the said Rogers was financially embarrassed, and, in fact, in failing circumstances, and that he owed the said firm of H. C. Snead & Co. a large sum of money, which shortly thereafter was reduced to judgment in the circuit court of Cherokee county. The exact amount of this judgment was $1,703, and cost of court. It further appears, without dispute, that on the day said deed was executed a suit, brought by said H. C. Snead & Co., was pending in the circuit court against said J. B. Rogers, and a summons to answer in said cause was served by the sheriff on said Rogers on that day. This indebtedness had been owing by said Rogers to said H. C. Snead & Co. for a long while, and they had been pressing for its payment.

It also appears from the evidence that in 1903—long before there were any dealings between the said Rogers and Snead & Co.— Rogers, the husband, purchased of W. A. Snead and wife 70 acres of land. This land will hereafter be designated the Snead land. Snead and wife conveyed this land to "J. B. Rogers and his wife, their heirs and assigns." The purchase price paid Snead was $700, but the evidence shows that, at the time of the conveyance here in question, this tract of land was of the value of about $1,700.

Of course, if Della Rogers was, as the evidence all tends to show, the wife of J. B. Rogers at the time of the Snead conveyance, she acquired by the conveyance an undivided one-half interest in the 70-acre tract. No objection could be urged against the deed for uncertainty as to one of the grantees, as the maxim of certum est quod certum reddi potest will be applied. Jones v. Morris, 61 Ala. 518.

We will, for the purpose of this opinion, treat Mrs. Rogers as the owner, in her own right, of an undivided one-half interest in the Snead tract, and that her interest therein was of the value of $850, as the evidence seems to indicate.

The evidence shows that the said J. B. Rogers resided upon the Snead tract, and that it constituted, in greater part, his homestead. He only owned an undivided one-half interest in the tract. Under the law, of course, the area of the homestead could not be enlarged by reason of any incumbrance thereon, or of the character of the estate or interest owned therein by him. This he well knew. It was his evident purpose to acquire the full interest in the home tract for the purpose of homestead exemptions. To accomplish this purpose, he seized upon the idea of conveying to the wife the 170 acres—which could not be claimed as a part of his exemptions—in exchange for her one-half interest in the home tract, thereby withdrawing in legal effect this 170 acres from the reach of creditors, and at the same time securing the full fee, for exemption purposes, in the Snead or home tract. All the while he had in contemplation bankruptcy and, eventually, the defeat of his creditors. Such was his evident scheme, and into this scheme, with full knowledge of her husband's financial embarrassment and failing circumstances, the wife willingly and wholeheartedly entered. The purpose, and the sole purpose of these tergiversations in title to the properties, was to defeat and defraud the creditors of the said J. B. Rogers.

It is not pretended that Mrs. Rogers paid her husband in money the difference in the values of the Snead tract and the 170 acres, which her husband conveyed to her. The fact is, she had no money. To obviate the effect that this disparity in values might have upon the result of this litigation, the respondents undertook to prove, by their unsupported testimony, that Mrs. Rogers really owned an undivided one-half interest in the 170 acres of land, which her husband conveyed to her; that she was, in fact, a copurchaser to this tract with him. The conveyance from the Bass Foundry & Machine Company to J. B. Rogers entirely refutes such a claim. We are fully persuaded by the evidence that Mrs. Rogers at no time owned any interest in the 170-acre tract, prior to the conveyance under attack in this case. The asserted claim is a sham and subterfuge. Under the evidence,

apart from any material rights, she had no interest in the 170-acre tract.

After the exchange of these conveyances between Mr. and Mrs. Rogers, which occurred on December 31, 1930, and after H. C. Snead & Co. had reduced their demand against the husband to a judgment, we find Rogers hastening to the District Court of the United States with his petition to be adjudicated a bankrupt. In this petition he solemnly asserts, under oath, that "he owes debts which he is unable to pay in full, and that he is willing to surrender all his property for the benefit of his creditors *except such as is exempt by law, and desires to obtain the benefit of the Act of Congress relating to bankruptcy.*"

Annexed to this petition are the usual schedules; among them, the schedule of unsecured debts. This schedule shows Snead & Co.'s debt of $1,703, along with other listed debts. Schedule B—Statement of all property of bankrupt. Real estate we find to be as follows: "S. W. ¼ of S. W. ¼, W. ½ of S. E. ¼, of S. W. ¼, section 7; ten acres west side N. W. ¼ of N. W. ¼, S. W. ¼ of N. W. ¼ of section 18; all in Township 11, Range 11 East, and N. E. ¼ of N. E. ¼, N. ½ of N. W. ¼ of N. E. ¼, and S. W. ¼ of S. E. ¼, all in Section 13, Township 11, Range 10 East, aggregating in all two hundred and ten acres. Estimated value $2,-000.00. Eighty acres of the above described lands are mortgaged to Irby A. Keener and F. M. Savage, to secure a debt of $403.25. Personal property: two mules, estimated value $50.00. Mortgaged $93.50. Property claimed as exempt by bankrupt. The petitioner claims as exempt to him under the laws of the state of Alabama, all the above described real and personal property." This schedule is also signed by said J. B. Rogers and duly sworn to before proper officer. If this debtor owned any other property, the petition does not disclose it.

While the schedule shows a mortgage on 80 acres of land, it is to be noted that the Snead tract—the real home tract—was not in the mortgage. The mortgage mentioned in the above schedule was executed on the 31st day of December, 1930, the same day that the deed of J. B. Rogers to his wife was executed.

Thus, while Rogers states in his petition that he is willing to surrender all his property except such as is exempt from levy and sale, we find that he in fact claims everything then ostensibly owned by him as exempt, and leaves nothing for creditors. While exceedingly generous in his offer, he was nevertheless careful to see that it was as "sounding brass or a tinkling cymbal."

The debtor was also careful to withhold this bankruptcy petition until the period of four months had elapsed, so as to remove the conveyance to his wife from the operation of the bankruptcy statute.

Reduced to its last analysis, we have a case where the wife, with a half interest in 70 acres of land, of the value of $870, acquiring by exchange from a financially embarrassed husband full title to 170 acres of land, of the reasonable market value of $1,700, she well knowing at the time that her husband was in failing circumstances, and that his purpose was to defeat his creditors in the collection of their demands. Can this court give its approval to such dealings?

In Little v. Sterne, 125 Ala. 609, 27 So. 972, 974, it was held: "If complainants were existing creditors, Mrs. Little, as a purchaser from the debtor for a valuable, though inadequate, consideration, would be protected unless she *had knowledge, actual or constructive, that he was insolvent or in failing circumstances, or unless she had knowledge of, and participated in, a scheme on his part to hinder, delay, or defraud his creditors.*" (Italic supplied.) This case was quite recently cited with approval in the case of Buell v. Miller, 224 Ala. 566, 141 So. 223, 225.

In the case of Buell v. Miller, supra, it was said: "It must not be lost sight of that the conveyance attacked is between husband and wife. Our court is firmly committed to the proposition that such relationship, in such cases, is not a 'badge of fraud, nor evidence of notice of bad faith on the part of the other as grantor, except to *illustrate other circumstances* having such tendency (Federal Land Bank of New Orleans v. Rowe et al. [222 Ala. 383, 133 So. 50], supra; Goetter v. Norman, 107 Ala. 585, 19 So. 56; Halsey v. Connell, 111 Ala. 221, 20 So. 445).' And in the case of Waddle v. Great Southern Phos. Co., 184 Ala. 346, 63 So. 462, 463, in an opinion by the late Justice De Graffenried, this court reaffirmed the rule declared in the case of Wimberly et al. v. Montgomery Fertilizer Co., 132 Ala. 107, 31 So. 524, wherein it was held: ' "Where the contract is between near relations, as between husband and wife, father and son, and the like, it will be subjected to a closer scrutiny * * * than if the parties to it were strangers." The same rule was announced in Seitz v. Mitchell, 94 U. S. 580, 24 L. Ed. 179, in the following language: "Such is the community of interest between husband and wife. Such purchases are so often made a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors and the wife *there is, and there should be,* a presumption against her which she must overcome by affirmative proof." ' " (Italics supplied.)

In the case of Federal Land Bank of New Orleans v. Rowe, 222 Ala. 383, 133 So. 50, 51, in an opinion by Justice Foster it is said: "The most important features of the law of

fraudulent conveyances in other respects have been analyzed and fully treated in our case of London v. Anderson Brass Works, 197 Ala. 16, 72 So. 359. The result was there found to be that if the consideration of the .conveyance be an existing debt, in a contest with an existing creditor, the grantee has the burden of showing the bona fides of his debt, and that it was adequate; whereupon the intention of the parties is immaterial. But that if the consideration is a new one, the grantee need only show that he in fact paid a substantial valuable consideration; whereupon the creditor must show that the grantee had notice of an intent by the grantor to hinder, delay or defraud his creditors. In the latter event inadequacy is a mere circumstance material upon the subject of such intent by the grantor and notice of it by the grantee, of more or less value, as such, dependent upon all the circumstances. Boutwell v. Spurlin, 203 Ala. 482, 83 So. 481; McCollum v. Burton, 220 Ala. 629, 127 So. 224. This is upon the well-known doctrine that the grantee is thereby protected as a bona fide purchaser, paying value for the property. When this is shown the burden to prove notice is on the other party to the controversy."

In the present case the contest is between existing creditors of the debtor and the wife of the debtor. The consideration paid by the wife was a new one, but "a substantial valuable one," though inadequate. This is shown by the evidence. While showing that the consideration was a new one, and also that it was "a substantial valuable consideration," yet the evidence also shows, beyond any sort of doubt, that Mrs. Rogers was fully aware of the financial condition of her husband and his purposes and intentions in conveying the property to her, and knew that his intention was to place his property beyond the reach of his creditors, and thereby to hinder, delay, or defraud them in the collection of their claims. This being true, under our uniform rulings, the conveyance from J. B. Rogers to his wife cannot stand. It must fall. A court of equity cannot give its sanction to such a scheme, as the evidence shows was attempted in this case. We are in accord with the court below in holding the conveyance executed on December 31, 1930, by J. B. Rogers to his wife fraudulent and void.

There is an equitable doctrine, well established, and fully recognized in this jurisdiction, that, when a conveyance is fraudulently made upon a consideration, which is valuable, but substantially inadequate, and the grantee is without notice of the grantor's intent, and himself intends no fraud, the conveyance is not wholly void, but will be allowed to stand as security for the value actually paid. London v. G. L. Anderson Brass Works, 197 Ala. 16, 72 So. 359; Gordon v. Tweedy, 71 Ala. 202; Caldwell v. King, 76 Ala. 149; Ruse v. Bromberg, 88 Ala. 619, 7 So. 384; Waddle v. Great Southern Phos. Co., 184 Ala. 346, 63 So. 462. It is equally well settled, however, that a grantee claiming under a conveyance which is actually fraudulent, and in which fraud the grantee actually participated, has no equity to claim the retention of the property as security for any purpose of reimbursement or indemnity. The reason for such holding is that, as to the creditors, the grantee acquired the property tortiously. Hubbard v. Allen, 59 Ala. 283; Gordon, Rankin & Co. v. Tweedy, 71 Ala. 202, 213; Caldwell v. King, 76 Ala. 149, 156; Ruse v. Bromberg, 88 Ala. 619, 7 So. 384; Waddle v. Great Southern Phos. Co., supra.

Our conclusion is, as heretofore stated, that the conveyance here attacked is tainted with actual fraud, known to the grantee at the time, and that she participated in the same. She has thus caught herself in her own meshes, and a court of equity will not extricate her.

It follows that the decree appealed from will be, and is, here affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.