# Henderson *et al. v.* J. B. Brown Co. *et al.*

*Bill in Equity by General Creditor to set aside and annul Attachment Proceedings for Fraud.*

1  *Collusive attachment; when void as against other creditors though founded on bona fide debt.*—Where a plaintiff and a defendant in an attachment suit collude together for the purpose of fraudulently transferring by attachment proceedings the property of the defendant debtor to an attaching creditor, such attachment is void as against the other creditors of the debtor who may thereby be hindered, delayed or defrauded (Code, § 2156), and is an attempt to dispose of property fraudulently, within the meaning of the statute (Code, § 818), conferring upon the creditor without a lien, the right to equitable relief against such attempt; and this is true though the alleged indebtedness of the defendant to the plaintiff in attachment was not fictitious or simulated but was a *bona fide* debt.

2.  *Same; bill to set aside collusive attachment when sued out on a simulated indebtedness.*—Under the provisions of the statute making suits commenced and decrees or judgments suffered with intent to hinder, delay and defraud creditors void as

[Henderson *et al* v. J. B. Brown & Co. *et al.*]

against such creditors (Code, § 2156), an attachment of an insolvent debtor's goods sued out and issued through collusion between himself and the attaching creditor on a simulated indebtedness for the purpose of giving such attaching creditor preference, and hindering, delaying and defrauding the other creditors of the debtor, is void; and a bill filed by the creditors of an insolvent debtor to set aside such attachment, which avers such facts, can be maintained under the statute (Code, § 818).

3. *Same; same.*—On a bill filed in such a case, it is immaterial and of no consequence whether any ground for the suing out of the attachment existed or not; and it is, therefore, no objection to the bill that it fails to aver that there existed no ground provided by the statute for the issuance of the attachment at the time it was sued out by said creditor.

4. *Same; same.*—In such a suit it is immaterial whether or not the attaching creditor knew of the defendant debtor's insolvency; since if his debt was simulated, the attachment was fraudulent, without reference to whether he knew that his debtor was insolvent or not.

5. *Equity pleading; ownership of note sued on must be denied by sworn plea.*—The ownership of complainant of the note which is the foundation of a suit in chancery can only be denied by sworn plea, (Code, § 1801); and such question can not be raised by demurrer to the bill.

6. *Same; doing business in this State.*—Where a bill is filed by a foreign corporation as a creditor of a merchant doing business in this State, which seeks to subject certain property alleged to have been fraudulently disposed of to the payment of the indebtedness of the resident merchant, incurred in the regular course of his business, it is no objection to such bill that it does not show that the complainant had filed a statement as required by the statute designating a known place of business and an authorized agent within this State; the selling of goods by a foreign corporation to a resident merchant not being the doing of business in this State as contemplated by the statute.

7. *Collusive attachment; burden of proof.*—Where an attachment of an insolvent debtor's goods is attacked by existing creditors as having been sued out through collusion between the debtor and an attaching creditor upon a simulated indebtedness, for the purpose of giving the attaching creditor preference, and hindering, delaying and defrauding the other creditors of the debtor, the burden is upon the attaching creditor to clearly and fully prove that the defendant in attachment was indebted to him in the amount claimed in the attachment suit.

[Henderson *et al* v. J. B. Brown & Co. *et al.*]

8. *Equity pleading; in general creditor's bill not necessary that all should recover.*—Where a bill is filed by a creditor, in behalf of himself and all other creditors of a common debtor who may come in and share in the expenses of the litigation, to have subjected to the payment of his debt property fraudulently disposed of, and a number of creditors of said debtor, by petition, make themselves parties complainant to the suit, the rule of law that all of the complainants must recover or none can, does not apply; and, therefore, the relief prayed for in the original bill can be granted notwithstanding some of the creditors who were made parties did not show themselves entitled to a recovery.

9. *Same; proper decree in a suit seeking to set aside a collusive attachment.*—In a bill filed, by an existing creditor in behalf of himself and all other creditors of the common debtor who may come in and share in the expenses of litigation, to have an attachment set aside and annulled as having been collusively sued out on a simulated indebtedness, and that the proceeds of the property attached be applied to the payment of the indebtedness of the defendant in attachment, where the complainant is entitled to the relief prayed for, it is proper for the chancellor in his decree to require the attaching creditor to pay into court the amount of money received by him from the proceeds of the good under his attachment proceeding, within a specified time, and to direct that in default thereof an execution issue against him; and it can be no ground of complaint against such a decree that the claim of the original complainant in the bill was a small amount compared to the amount received by the attaching creditor, when other creditors of the debtor were made parties to the suit.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE.

The bill in this case was filed on December 8, 1896, by the J. B. Brown Company, a corporation under the laws of Maryland; and it was averred in the bill "that on the 3d day of November, 1896, J. C. McKenzie, doing business in the city of Montgomery, Alabama, under the name of J. C. McKenzie & Company, was indebted to complainant in the sum of two hundred and twenty-seven, 15-100 dollars, for which said sum said J. C. McKenzie, under the name of J. C. McKenzie & Company,

executed his three promissory notes, all dated December 3, 1896, for the amounts and payable, respectively, as follows: The first for seventy-five and 72-100 dollars, payable to the order of orator, thirty days after date at the Farley National Bank; the second for seventy-five and 72-100 dollars, and the third for seventy-five and 71-100 dollars, payable respectively, sixty and ninety days after date at said bank."

The bill was filed in behalf of the J. B. Brown Company and all other creditors of said J. C. McKenzie, who might come in and share in the expenses of the suit, and J. M. Henderson, J. C. McKenzie and Charles E. Parks, Sheriff, were made parties defendant to the bill. The purposes of the bill and the facts of the case are sufficiently stated in the opinion.

Other creditors of J. C. McKenzie, who did business in the name of J. C. McKenzie & Co., were by petition, made parties complainant to the bill.

The defendant, Henderson, demurred to the bill upon the following grounds: "First. Because said bill is filed by a foreign corporation and does not show that said corporation had a known place of business in Alabama and an authorized agent thereat, nor that said corporation had filed in the office of the Secretary of State, a written statement designating a known place of business in this State and an authorized agent or agents residing thereat at the time said contracts were made. Second. Because said bill is filed for the purpose of enforcing a demand which was not due at the time said bill was filed, towit, one note for seventy-five and 72-100 dollars, and one for seventy-five and 71-100 dollars, payable, respectively, sixty and ninety days after date. Third. Because said bill is filed by a simple contract creditor to set aside an attachment as fraudulent and collusive and to enforce a demand alleged to be owing by J. C. McKenzie & Company, and shows that said demand or a portion thereof was not due and payable at the time of the filing of said bill in court. Fourth. Because said notes sued on were signed in blank by J. C. McKenzie & Company to be afterwards filled out, and said bill fails to aver that the name of a payee was filled

in said blank prior to the institution of this suit or who said payee is. Fifth. Because said bill fails to aver that the said Henderson sued out the attachment against J. C. McKenzie & Company with the intent to hinder, delay or defraud complainant, or any other creditor of said McKenzie & Company. Sixth. Because said bill fails to aver that no ground provided by the statute for the issuance of attachments existed at the time of the suing out of the attachment by said Henderson against said McKenzie & Company."

The 2d and 3d grounds of this demurrer were sustained, and the other grounds of the demurrer were overruled.

The complainants amended their bill by averring that they ask relief only as to the debts which were past due at the time of the filing of the bill.

Upon the submission of the cause upon the final hearing, on the pleadings and proof, the chancellor decreed that the complainants and the other creditors of J. C. McKenzie, doing business in the name of J. C. McKenzie & Company, were entitled to the relief prayed for, and that as to them the attachment proceedings should be set aside and vacated. After so ordering, the final decree then proceeds as follows: "And it appearing to the court from the evidence in this cause that the goods attached by said Henderson have been sold and converted and that upon the sale thereof they brought the sum of $11,325 dollars as shown by the return of said sale, made by the sheriff, and that the interest thereon from the date of sale is the sum of $490.77, it is ordered, adjudged and decreed that the said J. M. Henderson is liable to the complainants and other creditors of said McKenzie for said proceeds of sale and interest thereon, the same aggregating the sum of $11,815.77 and the costs of this suit to be taxed by the register, and that he pay the same into this court within ten days from the date hereof and in default thereof let execution issue therefor.

"It is ordered that said money when paid into court shall, beyond the costs, and such charges thereon as may be allowed by the court, be held by the register

under the orders of this court, for *pro rata* distribution among said creditors upon their debts. It is further ordered that it be and hereby is referred to the register, to take and state an account of the amount due the complainants at the filing of the bill as by the bill after amendment, and to other creditors (who have been admitted as complainants in this case) by J. C. McKenzie. It is further ordered that the register make publication in some newspaper published in the city of Montgomery, once a week for two weeks, notifying the creditors of said J. C. McKenzie doing business under the name of J. C. McKenzie & Company, to prove their debts within thirty days after the making of said publication; and all creditors who have not already proved their claims shall have the right to prove their claims before the register.

"The register will report the amount of all claims to the date of this report with interest thereon, which may be presented and allowed. Any party to this suit is authorized to contest before the register the allowance of any debt."

The defendants appeal and assign as error the decree overruling the 1st, 4th, 5th and 6th grounds of the demurrer interposed to the bill, and the final decree granting the relief prayed for.

R. L. HARMON and FOSTER, SAMFORD & CARROLL, for appellants.—Fraud is not to be presumed, when parties do not stand in fiduciary relations; and will not be imputed when the facts and circumstances from which it is supposed to arise are fairly and reasonably consistent with honesty of intention.—1 Story Eq., § 190; 1 Brick. Dig. 662, § 323; *Thames v. Rembert*, 63 Ala. 561; *Harrell v. Mitchell*, 60 Ala. 270; *Pollak v. Searcy*, 84 Ala. 259.

He who alleges fraud must clearly and distinctly prove the fraud he alleges. The burden is upon him to prove his case as it is alleged in the bill. If the fraud is not strictly and clearly proved, as it is alleged, relief cannot be had, although the party against whom relief is sought may not have been perfectly clear in his dealings. Fraud will not be carried by way of relief one title be-

yond the manner in which it is proved to the satisfaction of the court.    If a case of actual fraud is alleged by the bill, relief cannot be had on the bill by proving only a case of constructive fraud.    If the bill alleges a case of constructive    fraud    and    the    title    to    relief    rests upon that fraud only the bill will be dismissed, if the fraud, as alleged, is not proved.    It cannot be allowed to be used for any secondary purpose.—Kerr on Fraud & Mistake, 382; *Adams v. Thornton,* 78 Ala. 490. "Though the proof may show that complainants are entitled to relief it cannot be granted, unless it is shown that they are entitled to it on the grounds stated in the bill." *Sims v. Grier,* 83 Ala. 263; *Winter v. Merrick,* 69 Ala. 86; *Munchus v. Harris,* 69 Ala. 506; 3 Brick. Dig. 402, § 571; *McDonald v. Pearson,* 114 Ala. 630.

We think that rules governing the burden of proof are substantially the same in a proceeding of this kind as in a proceeding by a creditor to vacate a conveyance for fraud.    In cases of that kind, the burden is first upon the creditor to show that his debt existed at the date of the conveyance, and then the burden is shifted to the grantee to prove a valuable and adequate consideration for the conveyance, and then the burden is again shifted to the attacking creditor to prove fraud. *Chipman v. Glennon,* 98 Ala. 265; *Wilks v. Key,* 23 So. Rep.    7. And in such cases, the creditor may show that the consideration was a cash consideration, and that the intention was to place the property beyond the reach of creditors.    But if it be shown that the consideration was the satisfaction of a just demand, adequate to the value of the property conveyed, and that no benefit was reserved to the debtor, it makes no difference what the intention of the parties to the transaction was.    Such a conveyance cannot be assailed.—*Mobile Savings Bank v. McDonald,* 89 Ala. 434.

GUNTER & GUNTER, J. M. CHILTON and JNO. D. & C. H. ROQUEMORE, *contra.*—It is clear that the appellants' attachment being attacked as fraudulent, by existing creditors of J. C. McKenzie, and whose debts are proved, the burden of proof was shifted to the appellant to establish the amount and *bona fides* of this debt by evidence satisfactory to the court.

If this is done, then the proceeding may still be fraudulent, if it is collusive between the attaching creditor and the debtor. In such a case, the proceeding is a fraud upon the law, which provides this extraordinary remedy only for hostile, and not for friendly suits. *Cartwright v. Bamberger,* 90 Ala. 405; *Comer v. Heidelbach,* 109 Ala. 223.

The complainants were entitled to relief on each of the grounds alleged in the bill.—*Cartwright v. Bamberger,* 90 Ala. 405; *Comer v. Heidelbach,* 109 Ala. 223.

If any substantial part of the debt was simulated, the attachment was fraudulent.—*Cartwright v. Bamberger,* 90 Ala. 405.

In respect to this character of fraud, the same rule applies as in cases where conveyances are assailed for fraud. An antecedent debt due complainant having been shown, the burden is cast upon the defendants to show that the attachment represented a valid and subsisting debt.—*Cartwright v. Bamberger,* 90 Ala. 405; *Bamberger v. Vorhees,* 99 Ala. 297; *Comer v. Heidelbach,* 109 Ala. 223.

This burden is, first, one of pleading. If the debt be a real one, it is a fact peculiarly within the knowledge of the defendants. This being the case, they cannot shield themselves behind *general* denials, but must disclose in their answers, for the information of the complainant, the particulars of the indebtedness.—*Moog's Case,* 101 Ala. 209; *Robinson v. Mosely,* 93 Ala. 70.

TYSON, J.—The bill in this case was filed by J. B. Brown Company, a corporation under the laws of Maryland, in behalf of itself and all other creditors of McKenzie who may come in and share in the expense of the litigation, against the respondents Henderson and McKenzie, for the purpose of having a certain attachment proceeding instituted by Henderson against McKenzie declared fraudulent and void. The averments of the bill show that the complainant was an existing creditor at and prior to the suing out of the attachment. It is averred in the bill that for several years prior to the 25th day of November, 1896, McKenzie had been engaged in the

grocery business in the city of Montgomery, Ala., under the name of J. C. McKenzie & Company, and on said last named date had on hand a large stock of goods, wares and merchandise. That while the credit of McKenzie or "J. C. McKenzie & Company" was reputed to be good, this reputation was induced by the concealment of said McKenzie of his true financial status; said concealment being with the view to bolster his credit and enable him to purchase goods on time with a view of consummating a scheme which was consummated or attempted to be consummated by the levy of an attachment in favor of his brother-in-law, J. M. Henderson, as hereinafter stated, and that Henderson was aware of said concealment and of the purposes thereof. That on the 25th day of November, 1896, McKenzie was insolvent; that being insolvent, he conceived the design of preferring his brother-in-law by having him levy an attachment on said stock of goods, wares and merchandise, and thus prefer him over other creditors. That pursuant to said design into which said Henderson fully entered, an attachment was sued out by Henderson on the 25th day of November, 1896, against the said McKenzie, returnable to the city court of Montgomery, for the sum of seventeen thousand and forty-six and 72-100 dollars, besides attorney's fees, which attachment was forthwith, on the day of its issue, levied on the entire stock in trade of the said McKenzie. That said attachment was sued out by collusion between McKenzie and Henderson. It is also averred that the ground upon which said attachment issued as shown upon its face, to-wit, that said McKenzie "has money, property or effects, liable to satisfy his debts which he fraudulently withholds," was not true, and that no other ground of attachment existed so far as said Henderson was concerned. The bill further avers that the said alleged debt for which said Henderson attached was in large part, to-wit, to the extent of ten thousand dollars, simulated.

We have set out the averments of the bill with particularity for the purpose of pointing out the two theories upon which the complainant predicates its right to the relief sought. The first theory is based upon the

collusion and fraudulent use attempted to be made of the process of attachment issued out of the city court, without reference to the *bona fides* of the debt claimed by Henderson against McKenzie. Under this theory of the case as made by the bill, it is utterly immaterial whether there was a *bona fide* debt due Henderson or not. If Henderson and McKenzie colluded together for the purpose of transferring the property by means of the attachment to the former, the effort to resort to such judicial machinery, may be characterized as an "attempt" to make such fraudulent transfer. "It is the collusive and fraudulent use that is attempted to be made of the processes of the court in such cases, so opposed to the whole spirit and policy of the statutes which the law abhors and denounces."—*First National Bank of Montgomery v. Acme White-Lead & Color Co.*, 123 Ala. 344; *Comer v. Heidelbach*, 109 Ala. 220.

The other theory proceeds upon the proposition that the alleged debt of Henderson, which he was attempting to enforce by his attachment against McKenzie was simulated. If it be true as averred in the bill that it was simulated to the extent of ten thousand dollars, we are unable to see upon what principle the attachment can be upheld as a valid conveyance to Henderson of the property levied upon under it. The debt for which the attachment writ was sued out to enforce must be a *bona fide* one to support the attachment as against existing creditors as much so as the consideration must be *bona fide* to support the validity of an instrument made by a debtor conveying his property. The result, so far as the party receiving the benefit of the transaction and the creditors of the insolvent debtor are concerned, is the same. The plaintiff in attachment, if it is allowed to stand, is the beneficiary to the extent of receiving the money, proceeds, arising from a sale of the property levied upon to the exclusion of the creditors; while the grantee named in the conveyance, if it is held valid, is the beneficiary of the property itself.

The statute makes no distinction between the two classes of cases. This is made manifest by the reading of it which is in this language: "All conveyances or

assignments in writing, or otherwise, of any estate or interest in real or personal property, and every charge upon the same, made with the intent to hinder, delay or defraud creditors, purchasers or other persons of their lawful suits, damages, forfeitures, debts or demands; and every bond, or other evidence of debt given, suit *commenced,* decree or judgment suffered with like intent, against the persons who are or may be so hindered, delayed or defrauded, their heirs, personal representatives and assigns, are void."

So then we may eliminate from consideration the first theory upon which the complainant predicates its right to relief and confine our discussion of the case, as made by the pleadings, to the complainant's right to have the attachment suit declared fraudulent and void. For it cannot be said with any show of reason that there was error in the rendition of the decree granting the relief sought if it can be sustained upon this phase of the case.

A number of grounds of demurrer were assigned to the bill. The second and third grounds were cured by an amendment. The fourth in effect goes to the ownership by the complainant of the note, the foundation of the suit. Its ownership can only be denied by sworn plea.—Code, § 1801; *Smith v. Hiles-Carver Co.,* 107 Ala. 272.

The bill does not show a doing of business in this State by the complainant such as to require it to file a statement designating a known place of business and an authorized agent within this State. Indeed it might be said that it does not show the doing of any business in this State at all. The first ground of demurrer is, therefore, without merit.

The sixth ground raises the objection that the bill fails to aver that no ground provided by the statute for the issuance of the attachment existed at the time of the suing out of it by Henderson. It is of no consequence, whether any ground for the suing out of the attachment existed or not, if the debt for which it was sued out to enforce was simulated. If there had existed every ground provided by the statute for the issuance of the attachment, Henderson would have been guilty of a

fraudulent act, if he had attempted to get possession of McKenzie's property by means of the attachment, if he had no debt against McKenzie. The law would stamp his act as fraudulent and he must be held to the natural and logical consequences flowing from it. The result of such an act is to hinder, delay or defraud the other creditors of McKenzie, the defendant in attachment. And this would be true if the debt he attempted to enforce was simulated or fictitious in part.—*Cartwright v. Bamberger*, 90 Ala. 405.

What we have just said disposes of the fifth and last ground of demurrer. This brings us to a consideration of the answers filed by respondent Henderson to the bill. We will only advert to those portions of each which bear upon the phase of the case under consideration. Henderson denies that he knew of the insolvency of McKenzie and further says "he was of the impression and is so now, that he was solvent during the time from the commencement of his (present) business to its close." He admits the suing out of the attachment for $17,046.72 and its levy upon goods of the value of $12,000. All that is averred by him in his original answer upon the subject of his debts against McKenzie is in the following language: "All of the debts that this defendant took out his attachment upon are genuine and *bona fide*." In his amended answer he avers "that the debts upon which said attachment was sued out were for money and exchange loaned by this respondent to said J. C. McKenzie on or about the dates set forth in the notes described in the attachment proceedings and the complaint filed therein, and for the amounts expressed in said notes less interest, except one note for $5,000 which was for the indemnity of a certain acceptance made by the defendant to the Farley National Bank for said amount, all of which debts were genuine and *bona fide* at the time said attachment was issued and levied."

The evidence shows that the complainant was a creditor of McKenzie prior to the suing out of the attachment by Henderson, and the proof is abundant that McKenzie was insolvent when it was sued out. Indeed he does not deny it in his answer, and Henderson's answer can

37

hardly be construed as a denial of it. It is utterly immaterial whether or not Henderson knew of McKenzie's insolvency. For if his debts were not *bona fide,* his attachment must be declared fraudulent without reference to his knowledge on that subject. If his debts for which he sued out the attachment to collect, were not simulated or fictitious to any extent, and the attachment proceeding not collusive, then the attachment is valid notwithstanding he may have known him to be insolvent.

Pretermitting all inquiry as to the sufficiency of the answers of Henderson in affirming the facts relied upon as constituting the consideration of the notes which he alleges were the foundation of the attachment suit, it is very certain that the burden of proof was upon him to clearly and fully prove that McKenzie was indebted to him in the amounts expressed in said notes. In other words, he must overcome by full and clear proof, the presumption of *unfairness* and *mala fides.*—*Wood v. Pebbles,* 121 Ala. 100, and authorities therein cited; *Halsey v. Connell Greene & Co.,* 111 Ala. 221.

Henderson relies exclusively upon his own testimony to substantiate the *bona fides* of the various transactions by which McKenzie became his debtor as shown by the notes executed by McKenzie to him. It appears from his testimony, that the $17,046.72 which he claims was due to him, was made up of various items. $5,000 of this sum was evidenced by a note given by McKenzie to him as an indemnity for his acceptance in that amount to the Farley National Bank. $8,500 he says was borrowed by him at various times from the Farmers' Bank at Troy, Alabama, and loaned by him to McKenzie. The remainder was his own money directly loaned by him. He kept no record of the time he made these various loans to McKenzie; he is uncertain as to the place where he made some of them. He is indefinite in his statements as to whether he gave McKenzie a New York check or the cash in making some of the loans to him. He does not know what amount of the $12,000 was furnished by him to McKenzie in cash and what amount in New York exchange. He admits to have had correspondence with McKenzie in the negotiation of

some of these loans, but does not produce the letters received by him. He claims to have given his notes to the bank at Troy for the $8,500 at various times and to have paid these notes, but he fails to produce them. He says in his testimony that the officials of the bank knew of the borrowing of the money by him, yet they are not examined for the purpose of corroborating him. The evidence shows that when the first loan he claims to have made McKenzie, McKenzie had a partner in business with him, and yet the partner knew nothing of the transaction. Some of the New York exchange which he claims he delivered to McKenzie as constituting part of the consideration of McKenzie's notes to him appear not to have been indorsed by McKenzie. The circumstance to which he testifies, that the large amount of cash which McKenzie received from him, was handed to McKenzie in the city of Montgomery, taken from his pocket-book, without knowing before he left home that he was to make the loan, not only smacks of improbability, but contravenes the known conduct of ordinarily prudent business men. His failure to examine McKenzie as a witness, who is shown to have been his friend from the commencement of their dealings through the entire course of litigation, notwithstanding his attachment of McKenzie's property upon a mere rumor that some one else was going to attach him, is a circumstance entitled to some consideration. If it be true that McKenzie borrowed the money from him as claimed, certainly McKenzie's books would have shown the transaction, and furthermore, would have shown in some degree what McKenzie did with the money so received by him. His resort to attachment against his brother-in-law, in whom he claims to have reposed sufficient confidence to have loaned and become his security to the extent of $17,000, nearly one-half of the value of Henderson's entire estate, without indemnity from him, and without any intimation that McKenzie was attempting to defraud him in any way, is another circumstance tending to impeach his testimony; and this circumstance becomes more potent in this respect when we take into consideration, that notwithstanding the affidavit upon which his writ of attach-

ment was predicated charged McKenzie with actual fraud, McKenzie continued to be his friend and actually rendered assistance in the prosecution of the attachment suit by furnishing his books of account to the attorney of Henderson, in order that writs of garnishment might be served upon those who were indebted to him. There are many other circumstances shown in the evidence unnecessary to enumerate, tending strongly to impair the weight of Henderson's testimony. He is contradicted by other witnesses who are disinterested in the result of the cause upon material matters. We are of the opinion that he has not sustained the burden put upon him of showing by clear and satisfactory evidence that his debts were *bona fide*.

It appears from the record that quite a number of creditors accepted the invitation extended to them in the bill by filing their petitions to be made parties to the cause for the purpose of collecting their debts. The point is made that unless all the complainants can recover none can. This rule of law has no application to this class of cases. It can be invoked where all the complainants assert a joint right or title in the same cause of action.—*Doherty v. Holliday*, 137 Ind. 285; *Long v. Bank*, 85 N. C. 354; *Taber v. Royal Ins. Co.*, 124 Ala. 681; *Hill Bros. v. Moone*, 104 Ala. 235; *Steiner & Lobman v. Parker*, 108 Ala. 357.

Appellant complains that the chancellor in the decree required him to pay into court the amount of money received by him from the proceeds of the goods under his attachment proceedings within a specified time, and in default thereof an execution was directed to issue against him. His complaint is based upon the proposition that the complainant's debt is small—less than $100—and that the amount received by him was about $12,000. The utter fallacy of this contention is shown when we call to mind that this is a general creditor's bill and that the respondent, appellant, as to the money in his hands, is a trustee for all the creditors of McKenzie. The chancellor recognizing this and for the purpose of administering the trust fund and distributing it to whom it properly belonged, provided in the decree, for the taking and stat-

[City of Cullman v. Arndt.]

ing of an account by the register of the amount due to the complainant and to other creditors who have been admitted as complainants. He also ordered the register to make publication in some newspaper once a week for two weeks, notifying the creditors of McKenzie to prove their debts within thirty days after the making of the said publication; and further provided that all creditors who have not already proved their claims shall have the right to do so before the register. The decree also orders the register to report the amount of all claims which may be presented and allowed by him. This decree was manifestly proper.—2 Daniel Chan. Pl. & Pr., 1770, and cases cited in note.

There is no error in the record, and the decree is affirmed.